HON. J. J. SULLIVAN, } JUDGES.
HON. SILAS A. HOLCOMB, } JUDGES.

DEPARTMENT No. 1.
HON. WILLIAM G. HASTINGS,
HON. GEORGE A. DAY,
HON. JOHN S. KIRKPATRICK,

DEPARTMENT No. 2.
HON. SAMUEL H. SEDGWICK, } COMMISSIONERS.
HON. WILLIS D. OLDHAM,
HON. ROSCOE POUND,

DEPARTMENT No. 3.
HON. EDWARD R. DUFFIE,
HON. JOHN H. AMES,
HON. I. L. ALBERT,

---

LINCOLN STREET RAILWAY COMPANY ET AL. V. CITY OF
LINCOLN ET AL.

FILED JANUARY 4, 1901.  No. 10,609.

1. **Street Railway:** ORDINANCE: CHARTER OF CORPORATION: SPECIAL ASSESSMENT: PAVEMENT. Where, under the provisions of the constitution and the statute requiring the consent of a majority of the electors of a city before a street railway company is authorized to construct and operate a street railway in such city, an ordinance is adopted submitting to the electors the proposition of giving their consent to the construction and operation of a proposed street railway, and in which ordinance

(109)

it is provided "said railway track shall be so constructed as to present the least practical obstruction to the ordinary public use of the streets, and that it shall, when required, conform to the established grades of the streets as now or hereafter to be established when such streets are brought to grade; and further, said railway company shall be subject to all reasonable regulations in construction and use of said railway which may be imposed by ordinance," *held*, assuming that such provisions became a part of the charter of the corporation, having the elements of a contract with respect thereto, that an exemption from special assessment was not created, and the legislature was not thereby prohibited from imposing a liability on such corporation to pave the part of the street occupied by its tracks in conformity with the improvement of the remainder of the street, or, in the event of its neglect or refusal so to do, to authorize the levy of special assessments or taxes against the property of such railway company for the costs and expenses necessary to pave such right of way to conform to the remainder of the street improvements.

2. **Grant of Franchise:** STRICT CONSTRUCTION: CLAIM OF EXEMPTION. The charter or grant of franchise rights to a corporation is to be construed strictly, and a claim of exemption can not be sustained which is not in express terms granted or clearly implied from the terms of the grant.

3. **Constitution:** SPECIAL CHARTERS: PROHIBITION: EXCEPTION: FRANCHISE: GENERAL LAW: RESERVED POWER: ALTERATION AND AMENDMENT. Under the constitution and laws of this state, special charters to corporations, with the exceptions mentioned, are prohibited. Corporations receive their franchises only by general law, and are subject to all the legal rules and statutes as to the reserve power of the lawmaking body of alteration and amendment; the laws of the state and the articles of incorporation are considered in the nature of a grant and constitute the charter of the company.

4. **Statutory Provisions:** CONSENT OF ELECTORS: CHARTER CONTRACT. The provisions for obtaining the consent of a majority of the electors of a city before a street railway company is authorized to construct and operate a street railway over the streets of such city do not authorize the city to grant a charter to, or enter into a contract in respect thereto with such street railway company.

5. **Scope of Charter.** The charter rights are derived from the state, and the provisions of the ordinance, under which the consent of a majority of the electors is secured, obligate the street railway company to construct its street railway within the time and in the manner stated, and make it subject to such regulations as might lawfully be established by ordinance; the

Lincoln Street R. Co. v. City of Lincoln.

corporation is thereby privileged or permitted to enter upon the streets of the city for the purpose of constructing its tracks and to carry out the purposes of its organization, and it thereby derives no other or greater right than a privilege, license or permission to enter upon the streets for such purpose. Its grant of corporate franchises or privileges is not determined by such ordinance, but by general law.

6. **Power of Legislature.** The right of the legislature to require street railway companies in cities of a certain class to pave the part of the streets occupied by their tracks in conformity with the improvement of the remainder of the streets, or, in case of their failure or neglect to perform such duty, to authorize the municipal authorities to make such improvement, and, by the levy of a special assessment, charge the cost and expense thereof against such street railway company, which shall be a lien on its property, is a reasonable exercise of the reserve power vested in the legislature, and in nowise violates or impairs the obligation of a contract with respect to the charter of such street railway company.

7. **Police Power:** QUÆRE. Whether or not the power may be exercised as a police regulation or as a taxing power belonging to the legislature, not finally determined.

8. **Charter:** SPECIAL LEGISLATION. Where, by the charter provisions governing cities of the first class, it is provided that street railway companies in such cities shall be required to pave that part of the street occupied by the tracks of such companies, and in case of their failure or refusal, the city is authorized to perform such work and levy the cost and expense thereof as a special assessment against the property of such companies, such act will not be deemed special or class legislation, because not applying to all street railways in cities of different classes throughout the state.

9. **City of First Class:** ACT OF 1887: CONSTITUTION. By the provisions of the act of 1887 governing cities of the first class, requiring a street railway company to pave its right of way, and in case of its refusal and neglect so to do, authorizing the municipal authorities to perform the work and to levy and collect the cost and expense thereof as a special assessment against the property of such railway company, a tax is not imposed by the legislature upon a municipal corporation or the inhabitants or property thereof for corporate purposes, and the act is not violative of section 7, article 9, of the constitution.

10. **Act of 1887:** JUDGMENT IN PERSONAM: CONSTITUTION: INVALID PORTION OF ACT: QUÆRE. The provisions of the act of the legislature of 1887, authorizing a judgment *in personam* for the amounts levied as special assessments to pay the cost and ex-

penses of paving the right of way of a street railway in cities of the first class, do not, even if invalid, render the entire act unconstitutional. The remainder of the act is complete and enforceable, independent of the provisions authorizing a personal judgment. Whether or not the act with regard to a personal judgment is invalid is not determined.

11. **Right of Redemption:** CONSTITUTION: SELF-EXECUTING PROVISIONS. The act is not unconstitutional because no provisions are made for the redemption from sales of real estate for non-payment of taxes or special assessments as provided for by section 3, article 9, of the constitution. Under the constitutional provisions, the right of redemption is made secure to all those whose property as therein mentioned may be sold for non-payment of taxes or special assessments, and the right is secured in the absence of statutory provisions more definitely pointing out the mode by which the redemption may be made. The constitutional provisions are held to be self-executing.

12. **City of First Class:** CHARTER: ACT OF 1889: CITY COUNCIL LEVY. Under the city charter act of 1889, governing cities of the first class, an ordinance was passed by the city council creating paving districts and providing for the improvement of the streets therein, and the payment of the cost thereof by special assessment upon abutting property owners, the special assessment being levied by resolution, as provided for in section 74; after which the city council sat as a board of equalization to equalize the assessments, correct errors, etc., and thereupon made the final levy, but not by ordinance. *Held*, That such levy was valid, and that an independent ordinance making the final levy was not required. *Held further*, The provisions of subdivision 2 of section 68, Session Laws, 1887, relating to the levy by ordinance of special assessments and other taxes authorized by statute, do not apply to levies of special assessments or taxes for special benefits received because of local improvements.

13. **Method of Power Conferred.** Where the method for exercising the power conferred by statute upon municipal corporations is specially prescribed, that method must be followed in order to validate the action taken thereunder; but where no particular method for the exercise of the power is specified, the city authorities may act by resolution or other appropriate manner, and such action will be as effectual as it would be by ordinance for the same purpose.

14. **Petition:** SIGNATURES. In four certain paving districts the jurisdiction of the city council to act is challenged on the ground of the alleged insufficiency of the respective petitions of property owners. The council acted on such petitions, finding them sufficient, and thereupon engaged in the work of paving the streets in such district. *Held*, That as to a street railway

company, which is required to pave its right of way to conform to the remainder of the street improvement, it is immaterial whether or not the paving petitions had the required number of signatures. The authority to require the street railway company to pave its right of way does not depend upon the jurisdiction of the city council to establish paving districts and engage in the work of improving the streets therein by reason of the petition asking for such improvement; but on the statutory ground that, when streets are improved by the city authorities, it is incumbent upon street railways occupying parts of the streets to pave in conformity therewith the portion they occupy, and, upon failure or refusal so to do, the council is authorized to perform the work, and, by special assessment, make the cost thereof a charge upon the property of such street railway company.

15. **Paving:** GRADING. Where a city engages in the work of paving its streets, and, as a part of the general improvement, grading is done in order to accomplish the main object, *held*, that the cost of grading, being a part of the general improvement, is properly charged as being incidental to, and a part of, the work of paving, and that special assessments against a street railway company for the cost of paving its right of way may properly include the cost of grading also, the grading being incidental and necessary to accomplish the main object of paving the street.

16. **Rate of Interest.** Under the statute, taxes levied as special assessments in cities of the first class draw interest at the rate of twelve per cent per annum from the time of delinquency, and a decree enforcing a tax lien arising therefrom will draw interest at the same rate after rendition.

17. **Perpetuity of Tax Lien.** The lien of taxes in favor of a city levied as special assessments for street improvements is not barred by section 11 or 13 of the Code, but is perpetual, and may be enforced without regard to the provisions of the section mentioned.

18. **Street Improvements.** Where street improvements are made and the cost of paving that portion of the same occupied by street railway companies is levied as special assessments against the property of several street railways as separate properties, and the different street railways are afterwards consolidated and merged into one property and operated as one street railway system, the old companies losing their individuality and identity and the new company assuming the burdens and obligations of the constituent companies, *held*, that as between the consolidated company and the municipal authorities levying such special assessments the liens arising by reason of the several assessments against the different constituent companies and

properties attach to the new property owned and operated by the substituted company as one property in its entirety, and may be enforced by the sale of the property without dismemberment and separating it into fractional properties as it existed before consolidation.

19. **Mortgage:** Priority of Liens. Where, however, a mortgage was placed upon a street railway property, and afterwards another company, against which certain liens for taxes levied as special assessments existed, was consolidated with the mortgagor company, *held*, that the lien of the mortgage on the property covered thereby, without the consent of the mortgagee, could not be impaired by the agreements and acts of consolidation, and that the tax lien on the property consolidated and merged into the new company and with the property mortgaged could not be made prior to the mortgage lien on all the property after consolidation; that the tax and mortgage liens attached to the specific properties embraced in the levy and the ·mortgage respectively; and that the respective liens and their priority could be preserved unimpaired only by separating the different properties into their constituent parts as before consolidation, and awarding to each a lien according to priority.

20. ——: ——. Under the provisions of section 77 of chapter 13*a*, Compiled Statutes, 1887, which provides that "no mortgage, conveyance, pledge, transfer or incumbrance of any such property, of any such company or person, or of any of its rolling· stock or personal property, created or suffered by any such company or party, after the time when any street or part thereof upon which any such street railway shall have been laid, shall have been ordered paved, repaved, macadamized or repaired, shall be made or suffered except subject to the actual or prospective lien of said special taxes, whether actually levied or not, if such levy be in contemplation," *held*, that the lien of a mortgage attaching to a street railway property before street improvements were projected or in contemplation was prior to the lien of taxes levied thereafter as special assessments for the costs and expenses of paving the right of way of such street railway company to conform to the improvement of the remainder of the street.

21. **Tax Lien:** Ordinance. Under an ordinance providing for the payment of certain sums by a street railway in obtaining a permit to lay its tracks in streets already paved, and requiring that a bond be given as security for the discharge of the liability assumed, *held*, that there is no authority for making the sums due under the provisions of such ordinance a lien on the property of a street railway company, as in the cases of taxes levied as special assessments.

22. **Municipal Corporation:** Suit in Corporate Name: Presumption. A municipal corporation is authorized to sue and be sued by its

corporate name; and where an action is brought by a city in its corporate name by its proper law officers, it will be presumed that the action is authorized until the contrary appears.

ERROR from the district court for Lancaster county. Tried below before HOLMES, J. *Reversed.*

*William B. Hornblower, John H. Ames* and *James Byrne,* for plaintiff in error:

Sections 76 and 77 of the act of 1887 violate section 7, article 9, of the constitution. *State v. Wheeler,* 33 Nebr., 563.

The right granted by the city to the railway company to use the streets was a contract. The act of 1887 impaired the obligation of such contract, and is inimical to the federal constitution. *Chicago v. Sheldon,* 9 Wall. [U.S.], 50; *Coast L. R. Co. v. Mayor,* 30 Fed. Rep., 646; *Milhau v. Sharp,* 27 N. Y., 611; *Mayor v. Second Avenue R. Co.,* 32 N. Y., 261; *People v. O'Brien,* 111 N. Y., 1, 40; *Brooklyn Central R. Co. v. Brooklyn City R. Co.,* 32 Barb. [N. Y.], 358, 364; *Appeal of North Beach & M. R. Co.,* 32 Cal., 499.

The right conferred by the city upon a railway company to occupy the streets is a grant whose terms, once having been complied with, can not be altered, either by the city or the legislature. *Coast L. R. Co. v. Mayor, supra.*

The power reserved in section 1 of the article of the state constitution, entitled "Miscellaneous Corporations," does not authorize an act of the legislature impairing the obligation of contracts. There is a limitation to reserved powers. *Sinking-Fund Cases,* 99 U. S., 700, 720; *Shields v. Ohio,* 95 U. S., 319, 324; *Commonwealth v. Essex Co.,* 13 Gray [Mass.], 239; *City of Detroit v. Detroit & Howell Plank Road Co.,* 43 Mich., 140.

Even if the reserved power existed in the case at bar, it could be exercised only for the amendment or repeal of the general incorporation laws. *Trust Co. v. Citizens S. R. Co.,* 82 Fed. Rep., 1; *Braceville Coal Co. v. People,*

35 N. E. Rep. [Ill.], 62; *Foxworthy v. City of Hastings*, 23 Nebr., 772; *Touzalin v. City of Omaha*, 25 Nebr., 817, 825.

A law or ordinance requiring a street railway company to pave streets is not an exercise of police power. The limit of the exercise of police power in such case must be regulated with reference to the comfort, safety and welfare of society. Cooley, Constitutional Limitations [6th ed.], 710; *Horback v. City of Omaha*, 54 Nebr., 83.

*Harwood, Ames & Ames,* also for plaintiff.

*Charles O. Whedon* and *Joseph R. Webster, contra.*

The franchise conferred upon the plaintiff in error was obtained by virtue of the general incorporation law, which was subject to amendment at any time. Constitution, art. Miscellaneous Corporations.

Corporate franchises in the American states emanate from the government. What was granted by the city of Lincoln to the plaintiff in error was a mere license. *Chicago C. R. Co. v. People,* 73 Ill., 541.

There was no contract between the city and the plaintiff in error. The company's franchise was subject to such conditions as the legislature might impose for the public good. *Sioux City S. R. Co. v. Sioux City,* 138 U. S., 98.

The administrative powers of the city over the streets was conferred upon it for public purposes. It is an unalienable right, which the municipality can not bargain away. *State v. St. Paul C. R. Co.,* 81 N. W. Rep. [Minn.], 200.

*E. C. Strode, N. C. Abbott* and *D. J. Flaherty,* also for defendants.

HOLCOMB, J.

The Lincoln Street Railway Company and the New York Security & Trust Company, mortgagee of its property in trust, by proceedings in error to obtain a review of the trial had in the district court, pray a reversal of

the judgment therein rendered in favor of the city of Lincoln, plaintiff in the court below, for the sum of $108,526.58, principal and interest, and $2,915.60, penalties, for taxes or obligations in the nature of special assessments levied by the city of Lincoln on the property of the street railway company, plaintiff in error, as well as certain assessments levied against other street railway companies operating street railway lines in the city, which were, after the assessments, and before proceedings for a recovery thereof were instituted, consolidated with, and merged into, the company against which this action is brought. A recovery is sought for the cost of paving that part of the paved streets occupied by the street railways, including, in most instances, the cost of grading, and is based upon many different assessments in different paving districts and against the several companies operating various lines of railway, and covering a period of several years from and including the years 1888 to 1895. The amount found due is adjudged to be a first lien on all the lines of the defendant company situated in and near the city of Lincoln now or at any time during the existence of the tax liens mentioned in the petition owned by the defendant company, or of which it became possessed by the several agreements of consolidation; also, other lines in and near the city, constructed before or during the pendency of the action, which became the property of the defendant by purchase or otherwise, including its franchise, track, ties, road-bed, right of way, side-tracks, appurtenances, buildings, real estate, etc., belonging to the defendant company, all as one property. It is further adjudged that the defendant trust company's mortgage or trust deed is subject to the lien of the plaintiff city for the amount of the tax liens so as aforesaid found to be due. The decree is adjudged to draw interest at the rate of twelve per centum per annum, and the property ordered sold if the sums found due were not paid within a short time therein stated. The correctness of the judgment is challenged by the

plaintiffs in error upon several distinct and different grounds, but primarily for the reasons, as alleged, the enforcement of the claim of the city is violative of different provisions of the federal and state constitutions, in that it impairs the obligation of a contract, and the legislation authorizing the assessments contravenes different sections of the fundamental law of the state. The particular objections interposed, and which appear necessary to a rightful determination, will be considered in the further discussion of the case.

The authority for making the several assessments against the defendant and constituent companies afterwards consolidated with it is founded in the provisions contained in sections 76 and 77 of chapter 11 of the Laws of 1887, entitled "An act to incorporate cities of the first class having less than sixty thousand inhabitants, and regulating their duties, powers, and government."

Section 76: "All street railway companies now existing or hereafter created, in any city governed by this act or that shall hereafter be organized thereunder, shall be required to pave or repave between and to one foot beyond their outer rails, or in case said railway use more than one track in any street, they shall pave between and to one foot beyond their outer rails where such company owns at their own cost. Whenever any street shall be ordered paved or repaved by the mayor and city council of such city, such paving or repaving shall be done at the same time, and shall be of the same material and character as the paving or repaving of the street upon which said railway track is located, unless other material be specially ordered by the board of public works. Such street railway companies shall be required to keep that portion of the street required by them to be paved in repair, using for said purpose the same material as the streets upon which the track is laid at the point of repair, or such other material as the board of public works may require and order upon streets in cities governed by this act. * * * The track of all railway companies, when

located upon the streets or avenues of the city, shall be kept in repair and safe in all respects for the use of the traveling public, and such companies shall be liable for all damages resulting by reason of neglect to keep such tracks in repair, or for obstructing the streets or avenues of such city."

Section 77: "In the event of the refusal or neglect of such street railway companies to pave, repave, or repair when so directed by the mayor and council, upon the paving or repaving of any street upon which their track is laid, the mayor and council shall have power to pave, repave, or repair the same and the cost and expense of such paving, repaving, or repairing may be collected by levy and sale of any real or personal property of said street railway company, the same as special taxes are collected. Special taxes for the purpose of paying the cost of any such paving, repaving, macadamizing, or repairing of any such street railway may be levied upon the track, including the ties, iron, road-bed and right of way, side tracks, and appurtenances, including buildings, and real estate belonging to any such company or person, and used for the purpose of such street railway business, all as one property, or upon such part of such tracks, appurtenances, and property as may be within the district paved, repaved, macadamized, or repaired, or any part thereof, and shall be a lien upon the property upon which levied from the time of the levy until satisfied. No mortgage, conveyance, pledge, transfer, or incumbrance of any such property of any such company, * * * created or suffered by any such company or party, after the time when any street or part thereof, upon which any such street railway shall have been laid, shall have been ordered paved, repaved, macadamized, or repaired, shall be made or suffered, except subject to the actual or prospective lien of such special taxes, whether actually levied or not, if such levy be in contemplation. * * * The railroad track, or any other property upon which such special taxes shall be levied, or

so much thereof as may be necessary, may be sold for the payment of such special taxes in the same manner and with the same effect as real estate upon which such special taxes may be levied may be sold. It shall also be competent for any such city to bring a civil action against any party owning or operating any such street railway and liable to pay said taxes to recover the amount thereof or any part thereof delinquent and unpaid, in any court having jurisdiction of the amount and obtain judgment and have execution therefor, and no property, real or personal, shall be exempt from any such execution. * * * No defense shall be allowed in any such civil action, except as goes to the ground work, equity, and justice of the tax, and the burden of proof shall rest upon the party assailing the tax. In case part of such special tax shall be shown to be invalid, unjust, and inequitable, judgment shall be rendered for such amount as is just and equitable, and costs shall follow the judgment. * * * The provisions of this act in regard to the levy, collection, and enforcement of special taxes to pay the cost of paving, repaving, macadamizing, or repairing of any such street railways shall apply to all such special taxes hereafter levied."

It is argued by the learned counsel for the defendant and the mortgagee trust company, and with much plausibility, that the enforcement of the legislative provisions just quoted as against these defendants is an impairment of the obligations of a contract, and is, therefore, obnoxious to the provision of the federal constitution in respect to such matter. This contention is built upon the theory that in the ordinances submitting to the electors of the city the proposition of granting consent to the different companies to construct and operate street railways over the streets of the city there were certain provisions having within them the elements of a contract, which entered into the charter or franchise rights of such companies in the use of the streets of the city, and by the terms of which the defendant company is exempt from

any obligation of the nature sought to be imposed by the assessments under consideration.

By section 1, article 11, of the constitution, under the title "Miscellaneous Corporations," it is provided: "No corporation shall be created by special law, nor its charter extended, changed, or amended, * * * .but the legislature shall provide by general laws for the organization of all corporations hereafter to be created. All general laws passed pursuant to this section may be altered from time to time, or repealed."

Section 2: "No such general law shall be passed by the legislature granting the right to construct and operate a street railroad within any city, town, or incorporated village, without first requiring the consent of a majority of the electors thereof."

Pursuant to the constitutional provisions above quoted, the legislature, by suitable enactment, has provided for the incorporation of street railway companies, and by article 7, chapter 72, page 562, Compiled Statutes, 1887, it is provided that the consent of a majority of the electors of the city in which it is proposed to construct and operate a street railway must first be procured, and the manner of the procurement of such consent is therein prescribed; and such act provides, among other things, after the proposition has been submitted to the electors and ascertained to have been carried, that a certificate to that effect shall be required to be made out by the city clerk by direction of the council, and given to the chief officer of the corporation, who shall cause the same to be recorded in the office of the county clerk, where articles of incorporation are recorded, and in the same book; "and thereupon such street railroad company shall be authorized to proceed and construct and operate such street railroad, as described in its articles of association, or any portion thereof, subject to such rules and regulations as may be established by ordinances of such city." Sec. 5.

In the ordinance adopted submitting to the electors of

the city the proposition of giving their consent to the use of the streets by the several corporations mentioned in these proceedings, as required by the statute and constitution, before such corporation would have the right to construct and operate a street railroad within the city, it was provided as follows: "Said railway track shall be so constructed and maintained as to present the least practical obstruction to the ordinary and public use of the streets, and that it shall, when required, conform to the established grade of the streets as now or hereafter to be established when such streets are brought to grade. And further, said railway company shall be subject to all reasonable regulations in construction and use of said railway which may be imposed by ordinance." .

Conceding for the time being, and for the present purposes only, that in the ordinance, submitting the question of consent of the electors of the city to the use of the streets for a street railway, the provisions quoted entered into and became a part of the charter of the corporation and defined the terms of the grant or franchise obtained by the company, we are unable to find anything therein contained which was intended, or could, by any reasonable rule of construction, be said, to exempt the company from liability to pave and repair its right of way, as required by the section of the statute quoted.

It is a well recognized and generally accepted rule of construction, that where exemptions are claimed under grants of franchise rights, the language will be strictly construed, and a claim of exemptions can not be sustained which is not, in express terms, granted or clearly implied from the terms of the grant. *Delaware Railroad Tax*, 18 Wall. [U. S.], 206; *Bank v. Commonwealth*, 10 Pa. St., 451; *Railway Company v. Philadelphia*, 101 U. S., 528.

Says Judge Cooley, in his work on Taxation (2d ed., p. 205): "It is also a very just rule that, when an exemption is found to exist, it shall not be enlarged by construction. On the contrary it ought to receive a strict

construction; for the reasonable presumption is that the state has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant;" and on page 207: "The most striking illustration of the rule of strict construction of exemptions is seen in the case of special assessments for local improvements, such as the paving and repair of streets, etc. It is almost universally held that à general exemption from taxation will not extend to such assessments."

In *Western Paving & Supply Co. v. Citizens Street Railroad Co.*, 128 Ind., 525, it is held that a charter having the elements of a contract granted to a street railway company is to be strictly construed against the company, and that it has no doubt rights under such charter; for where there are doubts, they are construed against the grantee and in favor of the city.

Says the supreme court of Illinois, that though a railroad company is exempt by its charter "from all taxation of every kind except as herein provided," it is liable for special taxes levied on its right of way for street paving adjacent thereto. *Illinois C. R. v. City of Decatur*, 38 N. E. Rep., 626.

In the language of the ordinance quoted and relied on, we are unable to find any words from which it may be inferred that it was the intention to exempt the defendant company from the charges sought to be imposed in the present instance, and unless the exemption is clearly expressed, the doubt, if any there be, must be resolved against the company. We find no words of limitation or restriction by which it may be said the legislature deprived itself of the right to impose upon the street railway company the burden of paving and repairing, or paying the cost thereof, that part of the paved streets of cities of the class mentioned composing its right of way and occupied by its tracks. In these several ordinances, under which the consent of the electors was se-

cured, it was specially provided that the railway company
should construct and maintain its tracks, so as to pre-
sent the least practical obstruction to the ordinary public
and general use of such streets, and be subject to all rea-
sonable regulations in the construction and operation of
its railway. It is a matter of common knowledge that by
charters, statutes and ordinances of regulation street
railway companies are usually required to pave and keep
in repair their right of way over the street in conformity
with the improvements made by the local authorities.
The reports are filled with decisions upon the subject;
statutes are numerous imposing the obligation, and the
fact that the exercise of the power is of such general
application is of itself evidence that the requirement is
regarded as a reasonable and just one. The railway com-
pany is given the prior and almost exclusive use of the
portion of the streets occupied by its tracks, the public
surrendering its right to use such portion for the benefit
of the company; and that it should be required to keep
the part of the street it occupies in good repair, and in
uniform condition as to grade and pavement as that of
the remainder of the street, seems to be founded in rudi-
mentary principles of justice and fairness as between
the company and the public at large. Not only is there
an entire absence of words from which the exemption
claimed can be inferred, but, on the contrary, it would
seem the requirement as to paving can only be regarded
in the light of a reasonable regulation contemplated by
the language of the ordinance relied on. It is quite clear
that the provisions are incapable of any reasonable con-
struction which will create the exemption claimed.
None of the authorities cited appear to us as going to the
extent of holding that similar provisions in ordinances,
admittedly granting franchise rights, secure to a corpora-
tion immunity from burdens such as are sought to be
imposed in the case at bar, or the enforcement of which
would impair the obligation of a contract. Nor are we
disposed to the view that provisions such as are under

consideraton are restricted and refer only to the obligation of a street railway company to not interfere or obstruct the city in the prosecution of municipal improvements upon streets occupied by such railway company, as contended for by plaintiff's counsel. A proper construction must be determined from the language used and the circumstances and purposes of its adoption, and the object to be accomplished thereby. It contained no words of restriction or limitation as to obligations of the company under its franchise; no mention is made, nor is there a basis for an inference of exemptions from taxation or other assessments of any character. It provided only, and was declaratory of the provisions of the statute, that the corporation should be subject to rules and regulations, established by ordinance of the city.

This brings us directly to the question of the nature, scope and legal effect of the ordinance under which defendant claims exemption, which it is desired briefly to consider. Counsel for defendants insist that the ordinance establishes a contract with respect to its franchise, defines its terms and grants property rights, which are infringed upon by the statutes afterwards enacted requiring the company to pave the part of the streets occupied by its tracks. We observe no authority in the statute giving to the city the right to grant charters to street railway companies, and as all such authority must be derived from the statute, we must conclude that, unless it is found there, it does not exist. By the constitutional provisions quoted, special charters are prohibited, and corporations·receive their franchises only by general law, and subject to all legal rules and statutes as to the reserved right of the lawmaking power of alteration and amendment. The laws of the state and the articles of incorporation are considered in the nature of a grant, and constitute the charter of the company. *Abbott v. Omaha Smelting Co.*, 4 Nebr., 416; *Lincoln Shoe Mfg. Co. v. Sheldon*, 44 Nebr., 279. In the case of a street railway corporation, the grant by the legislature under general law

is by the constitution ineffectual, without such company first obtain the consent of a majority of the electors to the construction and operation of a proposed street railway over the streets where such railway is to be constructed. The statute provides how such consent may be secured. Compiled Statutes, 1887, p. 562, ch. 72, art. 7. It is therein provided how the question shall be submitted. No authority is given the city except to submit the proposition. It is not authorized to grant a charter upon any terms whatever. There is, we think, a marked distinction between a provision enacted for the purpose of securing the consent of a majority of the electors of a city for a street railway corporation chartered under the general laws to construct and operate a street railway over the streets of such city, and authority to the city as a municipal corporation to grant to such corporation a charter to construct its railway over the streets under terms and stipulations entered into by such city. While it is essential that the consent of a majority of the electors be secured before any charter or franchise rights can accrue to a street railway company, the provisions of the constitution and the statutes requiring such consent can not be made the basis of a contract respecting corporate rights and privileges between the city and such company. The charter rights are derived from the general law. The consent of a majority of the electors can only be regarded as a condition precedent, on the happening of which is dependent the right to construct and maintain on the streets a railway, and does not enlarge or restrict the grant arising by virtue of the general laws, or in other respects affect the legislature in the exercise of its lawful authority. The property rights of the defendant company, its right of an easement in the streets for the purposes of its creation, and its corporate franchise derived under the law, are all recognized and respected. If contention of counsel be correct, and the ordinance and its acceptance constitutes a contract between the city and defendant with respect to its franchise, then it is in the

power of the authorities of the different towns and cities
to enter into contract relations with respect to such fran-
chise, which in effect creates special charters, nullifies
the constitutional provisions referred to, and renders im-
potent the legislature as to all future legislation in re-
gard to such matters.  This clearly is not the law.  If it
were sought to deprive the defendant of any of its "vested
rights," many of the authorities cited would be applica-
ble and carry great weight.  Defendant assumes that the
city has granted it a charter, and that in that charter it
is exempted from any assessment, either as special bene-
fits, or as a reasonable regulation and an exercise of the
reserve power of the legislature.  We think it in error in
both respects.  The provisions relied on do not, in our
judgment, warrant the inference that the burdens sought
to be imposed were exempted; nor do the corporate rights
and privileges of the defendant have their origin in the
ordinance under which the consent of the electors was
obtained, but in the general laws of the state.  The ordi-
nance, so far as the provisions relied on are concerned,
should, it seems to us, be regarded as one of regulation
authorized by statute, and not of contract creating vested
rights.  Says the eminent author of Constitutional Law,
Judge Cooley, in *Detroit v. Howell Plank Road Co.*, 43
Mich., 140, 145: "Legislators cannot thus bind the hands
of their successors where the elements of contract, con-
cession and consideration do not appear; and the doctrine
that they may do so by contract is one so exceptional and
so liable to abuses that courts will not be astute in dis-
covering the existence of a contract between the state
and those who claim franchises under it, where the es-
sential elements of a contract are not manifest.  All
questions of doubt are to be solved in favor of the state
in such cases, and 'to be in doubt is to be resolved.'"

With authorities cited by counsel in support of the
doctrine against impairment of contract obligations we
entirely agree, but are unable to conclude therefrom that
any contract right in the case at bar is in any way im-

pained. Where cities are authorized, and do in fact, grant charters under conditions and agreements establishing a contract, the rule invoked would apply; but in the absence of authority to enter into such agreements, or where no agreement in fact exists, other rules must be resorted to in determining the rights of contesting parties. The distinction we are endeavoring to draw is clearly recognized in nearly all the cases cited, and especially in *Coast-Line R. Co. v. Mayor*, 30 Fed. Rep. [Ga.], 646. In that case it appears the city was authorized and did enter into a contract with the railway company, which contained mutual stipulations under which the railroad should be constructed and operated, among others, in the event of paving by the city of the whole or any portion of the street used by the railway company, the portion of the track between the rails should be paved and kept in good repair by the company at its own expense and cost. It was there held, not only that the city had authority, but that the contract was valid under the laws of the state at the time made, and that afterwards different terms could not be imposed on the corporation to its injury and for the benefit of the other contracting party. It is said in the opinion: "The reservation of the state to withdraw the franchise of this railroad company cannot be disputed, and that reservation affects the entire relation between the state and the corporation, and places under legislative control all rights, privileges and immunities 'derived by its charter directly from the state.' But rights and interests acquired by the company, not constituting a part of the contract of incorporation, stand upon a different footing. It is competent for the state, in the exercise of its reserve power, to alter the act incorporating the company in all particulars constituting the grant to it of corporate rights, privileges and immunities. These flow from the state and should properly be kept under its control." The holding in that case was placed distinctly on the ground of the authority of the city to enter into the contract which it

did, and that such contract gave to the railway company rights in no wise connected with its franchise from the state. Also, in *Chicago v. Sheldon,* 9 Wall. [U. S.], 50, 55, wherein it is said: "A contract having been entered into between the parties, valid at the time, by the laws of the state, it is not competent even for its legislature to pass an act impairing its obligation, much less could any decision of its courts have that effect. A point is made, that the legislature have not conferred, or intended to confer, authority upon the city to make this contract. We need only say that full power was not only conferred, but that the contract itself has been since ratified by this body."

No authority being conferred upon the city to contract with a street railway company with respect to the grant of its corporate rights and franchises, we think it follows that by the provisions of the ordinances under which the consent of a majority of the electors was secured, the railway company obligated itself to construct a railway within the time and manner therein stated, and be subject to such regulations as might lawfully be established by ordinance in conformity with the statute in that regard, and was thereby privileged or permitted to enter upon the streets of the city for the purpose of constructing its tracks so as to carry out the purposes of its organization; that by such ordinance, it derived no other or greater right than a privilege, license or permission to enter upon the streets for such purpose; and that its corporate franchises and privileges were not determined and fixed by such ordinances but by general laws.

In *Chicago C. R. Co. v. People,* 73 Ill., 541, it is held that a franchise emanates from the state, and where a company is incorporated by the legislature with power to construct and operate a railway in a city upon the consent of the city, in such manner and upon such conditions as the city may impose, and the city by ordinance grants the privilege of constructing and operating the same, the grant by the city is a mere license and not a franchise.

13

In the opinion it is said: "But in the case at bar the grant in the ordinance is not a franchise, but a mere license, a permission to construct a railway in a certain street within a limited period. A franchise, according to the definition given by Blackstone, is a royal privilege or branch of the king's prerogative, subsisting in the hands of the subject, and, being derived from the crown, must arise from the king's grant. 2 Blackstone, 17. Corporate franchises in the American states emanate from the government, or the sovereign power, owe their existence to a grant, or, as at common law, to prescription, which presupposes a grant, and are vested in individuals or a body politic. The grant or license given by the ordinance comes within no definition of a franchise. Besides, a municipal body, it is understood, possesses no power to confer a franchise. *Davis v. Mayor*, 4 Kernan [N. Y.], 506."

In *State v. Jacksonville St. R. Co.*, 10 So. Rep. [Fla.], 590, it is stated in the third syllabus: "It is within the power of the legislature to delegate to municipal corporations the right to license or permit railroad companies to lay railroad tracks in the streets in such manner as not to divert them from their original uses; but a difference exists between the power of a municipal corporation to grant a corporate franchise and the right to permit a corporation vested with such franchise to place railroad tracks in the public streets. If the municipal body can ever grant a corporate franchise, such power must be expressly conferred by the legislature." In the opinion of the court it is said: "The legislature has undoubtedly supervision and control of highways and streets, and may authorize the construction of a railroad, operated either by steam or animal power, across or along them. This results from the dominant power which the state possesses over all its highways; and it may be done without the consent of municipal authorities. 2 Dill., Mun. Corp., 656; Elliott, Roads & S., pp. 562, 563; Pierce, R. R., p. 246; Lawson, Rights, Rem. &

Pr., sec. 4003; *Eichels v. Railway Co.*, 78 Ind., 261; *Railroad Co. v. Mayor, etc.*, 45 Ga., 602; *Hodges v. Railway Co.*, 58 Md., 603." And further on in the same opinion it is said: "Here it may be proper to say that there is a material difference between the power of a municipal corporation to grant a corporate franchise, or authority to construct a street railroad and take tolls and emoluments for services, and the right to license or permit corporations vested with such franchises to lay tracks in streets in such manner as not to divert them from their original uses. If the municipal body can ever exercise the power to grant such corporate franchises, it must be expressly conferred by the legislature. The cases of *Davis v. Mayor*, 14 N. Y., 506, and *People's Railroad v. Memphis Railroad*, 10 Wall. [U. S.], 38, were decided, we understand, upon the theory that the municipal bodies had no such power."

We now reach what we conceive to be the most cogent reason for upholding the validity of the sections of the statute assailed by defendants. We are convinced that the power therein exercised is one reserved to the legislature by the constitution, and of which it is incapable of divesting itself; and for stronger reasons, it could not authorize a city council to act in such a manner as to deprive it of such power. The right being reserved to the legislature by the constitution, it is empowered to alter, amend or repeal the laws respecting street railways in such manner as is approved by its wisdom and judgment; and this right extends, not alone to laws providing for the incorporation and organization of such companies, but also to those which seek to control, regulate and otherwise affect such corporations in the enjoyment of their franchises.

Says Judge Field, of the United States supreme court, with reference to a reservation in a statute that the charter of every corporation should be subject to amendment, alteration or repeal by legislative authority: "The reservation affects the entire relation between the state and the corporation, and places under legislative control

all rights, privileges and immunities derived by its char-
ter directly from the state." *Tomlinson v. Jessup*, 15 Wall.
[U. S.], 454, 459. Of like import is *Railroad Co. v. Maine*,
96 U. S., 499, in which the opinion was written by the
same eminent jurist. In speaking on the same subject
Judge Cooley, in *Detroit v. Detroit & Howell Plank Road
Co.*, 43 Mich., 140, 147, says: "But for the provision in the
constitution of the United States which forbids impairing
the obligations of contracts, the power to amend and re-
peal corporate charters would be ample without being
expressly reserved. The reservation of the right leaves
the state where any sovereignty would be if unrestrained
by express constitutional limitations, and with the pow-
ers which it would then possess. It might therefore do
what it would be admissible for any constitutional gov-
ernment to do when not thus restrained, but it could
not do what would be inconsistent with constitutional
principles. And it cannot be necessary at this day to
enter upon a discussion in denial of the right of the gov-
ernment to take from either individuals or corporations
any property which they may rightfully have acquired."

The right to alter or amend is not an unrestrained
right, but a power which is to be exercised subject to
fundamental principles controlling all valid legislation.
Says Mr. Justice Swayne, in *Shields v. Ohio*, 95 U. S.. 319,
324: "The power of alteration and amendment is not
without limit. The alterations must be reasonable; they
must be made in good faith, and be consistent with the
scope and object of the act of incorporation. Sheer op-
pression and wrong cannot be inflicted under the guise
of amendment or alteration. Beyond the sphere of the
reserved powers, the vested rights of property of cor-
porations, in such cases, are surrounded by the same
sanctions and are as inviolable as in other cases." Or,
as is said in *Commonwealth v. Essex Co.*, 13 Gray [Mass.],
239, 253: "Where, under power in a charter, rights have
been acquired and become vested, no amendment or al-
teration of the charter can take away the property or

rights which have become vested under a legitimate exercise of the powers granted."

No property or vested rights are endangered or lost to the defendant by the sections of the statute objected to. The power invoked is a regulation to which all, in some form or other, are subjected in bearing the burdens incident to the growth and development of the municipality. As before intimated, the requirements are only reasonable and appropriately attach and belong to a street railway company in the conduct of its business over the paved streets of the city. For both the validity and reasonableness of the exercise of the legislative power objected to we have precedent well supported by authority.

In *Conway v. City of Rochester*, 51 N. E. Rep. [N. Y.], 395, under a law quite similar to the one now under consideration, it was held in a contest between the city authorities and abutting property owners whose property had been assessed for special benefits for paving a street, that the law made it mandatory upon the city council to require the street railway company to pave its right of way, and that the burden which thus rested on the company could not be shifted to abutting property owners.

In *Wood v. Common Council*, 56 N. Y. Supp., 105, the views expressed in the *Rochester Case* were reiterated and followed. In that case it is held that the provisions of the statute requiring street railway companies to pave between their tracks and two feet from the outside thereof, applies to all street-surface railway companies, whether incorporated prior or subsequent to the act; that the omission in a charter of a street railway company of a provision compelling it to pave streets along its tracks does not vest in it or its successors a perpetual exemption from such obligation subsequently imposed by the legislature under the power given it by the constitution providing that all general laws creating corporations may be altered from time to time; and that a city council was without power to exempt street railway companies from

the provisions of the general laws of the state requiring pavement by them of the streets along their tracks. Although cautioned against giving weight to this case because the decision was rendered by a tribunal of inferior jurisdiction, we find many points in it having an intimate bearing on the case at bar, and regard its reasoning as logical and sound, and the propositions considered as a correct exposition of the law.

*Storrie v. Houston City St. R. Co.*, 46 S. W. Rep. [Tex.], 796, was a case involving the rights of a mortgagee of a street railway property, legislation affecting the corporation, mortgagor, having been enacted subsequent to the execution of the mortgage. The charter or law governing the city of Houston provided that the cost of a street improvement should be charged against abutters, and that a street railway shall be liable for costs of paving between the rails and for six inches on each side. It was there held that the company was liable for paving to the extent stated, notwithstanding a resolution by the city council providing that costs of the improvement should be wholly defrayed by the abutting property owners. The constitution of that state provided that "no irrevocable or uncontrollable grant of special privileges or immunities shall be made, but all privileges and franchises granted by the legislature or created under its authority shall be subject to the control thereof." It was held that the legislature had the right to amend the city charter so that the street car company became liable for the costs of paving six inches on each side of its tracks, in addition to its former liability of paving between the rails, and that such law was not unconstitutional as impairing the obligation of a contract in reference to a prior mortgage executed while the constitutional provision was in force. Says Brown, J., after quoting the provision of the constitution: "This provision of the constitution was in force at the time the street railway company acquired its rights in the streets of Houston and before the mortgage of the trust company was executed.

The rights of both the street railway company and the mortgage company were acquired subject to the control of the legislature upon this question. The legislature had the right to enact the law of 1891, amending the charter of Houston, by which the liability of the street car company for the cost of paving the street was enlarged. That act does not violate the constitution of this state nor of the United States."

In *Sioux City St. R. Co. v. Sioux City*, 43 N. W. Rep. [Ia.], 224, in an opinion afterwards affirmed by the supreme court of the United States (138 U. S., 98), it was held that, although the charter of a street railway company required it to pave inside its rails, a subsequent ordinance passed by the city in pursuance of an act of the legislature, requiring it to pave one foot outside of its rails is not in violation of the obligation of a contract, assuming the charter to have been a contract; and did not thereby preclude the city from imposing additional burdens which were authorized by the laws of the state. At the time of the organization of the street railway company, there was a provision in the Code of Iowa which read as follows: "The articles of incorporation, by-laws, rules, and regulations of corporations hereafter organized under the provisions of this title, or whose organization may be adopted or amended hereunder, shall at all times be subject to legislative control, and may be at time altered, abridged, or set aside by law, and every franchise obtained, used, or enjoyed by such corporation may be regulated, withheld, or be subject to conditions imposed upon the enjoyment thereof, whenever the general assembly shall deem necessary for the public good." In support of the same general principles, we cite *City of Philadelphia v. Passenger R. Co.*, 33 Atl. Rep. [Pa.], 126, and *City of Lansing v. Lansing City E. R. Co.*, 66 N. W. Rep. [Mich.], 949.

We therefore conclude the sections objected to were enacted by the legislature in the exercise of a valid power belonging to it; that no rights or privileges possessed by

the defendant company or those consolidated with it were invaded or impaired by such legislation; and that the legislature had the right to impose the liability by said sections created, notwithstanding the ordinance under which defendant claims exemption from such liability. We do not think the law in this respect contravenes any provision of either the federal or state constitution.

It is also argued by the city that the legislation imposing the obligation on the defendant to pave its right of way under the circumstances prescribed may properly be sustained on the grounds of the taxing power for benefits received from local improvements, and also under the police power of the state. Because of the many questions raised in the case, the consideration of which we regard as of more pressing importance in its disposition, for want of time and in view of what has already been said, we do not deem it advisable to fully consider these questions. Many strong and substantial arguments may be advanced in support of the proposition that the power is properly exercised as a police regulation. "The regulation," says Judge Cooley, "must have reference to the comfort, safety or welfare of society." The comfort and safety of the public are certainly largely affected by the condition of the surface of a public street over which is run street cars propelled by electricity. Convenience in locomotion and freedom from accident on such streets materially depend upon the evenness of the surface of the streets, and minimizing, as far as practicable, of all obstructions by reason of street railway tracks. It is especially manifest that at all street intersections a level crossing, capable of convenient, easy and rapid transit of both vehicles and foot passengers, is of the utmost importance to the safety of the traveling public. And for the same reason, though in a lesser degree, should there be, throughout the entire distance traversed by such street railway, free access across the streets at all points to adjoining property, as well as to facilitate the passing of vehicles traveling in different directions. It

would seem that on the ground of the taxing power the legislation could be sustained. Certainly it is within the province of the legislature to provide for the taxation of street railways for property specially benefited by local improvements. *Appeal of North Beach & M. R. Co.*, 32 Cal., 499; *Cicero & P. St. R. Co. v. City of Chicago*, 52 N. E. Rep. [Ill.], 866; *Atchison, T. & S. F. R. Co. v. Peterson*, 51 Pac. Rep. [Kan.], 290. The more difficult question arises by reason of the fact that the legislature has apportioned and fixed with certainty and definiteness the portion of the streets which are to be paved at the cost of the street railway company and charged to it as a special benefit for the improvement made by the paving of the street. In whatever power the authority rests, if we are permitted to speculate regarding the matter, we would say some of the elements of the several powers spoken of entered into the considerations which moved the legislature to act. The act was an exercise of the power of reasonable regulation. It is entirely fitting and proper that the street railway company should be required to pave that part of the streets occupied by its tracks. The public comfort and safety were promoted by the exercise of such power, and the material benefits accruing to a street railway company by the paving of a street occupied by it was doubtless an inducement, which, in no small degree, actuated the legislative mind in framing the law imposing the obligation to pave at its own cost the part of the street occupied by a street railway company. While it is not an abutting property owner, in the strict sense of the word, it is an owner of property lying within and forming a part of the improvement actually made, and for the sake of uniformity, appearance, use and convenience, safety and comfort of the public, and benefits received, should, in the nature of things, bear such burden. The right of the legislature to thus provide for the cost and expense of such improvement by special assessment, and to fix the amount and apportion the charge to be borne by the different parcels

of property, by the giving of notice before the assessment is made, is distinctly recognized in *Spencer v. Merchant,* 100 N. Y., 585, a case where the reasons for the conclusions reached were not nearly so strong as in the present instance, and which case was afterwards removed to the United States supreme court (*Spencer v. Merchant,* 125 U. S., 345), and the principle enunciated by the state court received the approval of the latter tribunal. As stated, however, we do not finally decide these two questions, preferring to ground our conclusions upon the broad and fundamental doctrine of the right of the legislature to impose the burdens as a reasonable exercise of its reserve power.

It is also argued that the act is unconstitutional because it is in the nature of a special law or class legislation, applying only to a portion of the street railways of the state. We regard the law as in no way conflicting with the provisions referred to. It is quite well settled in this jurisdiction that laws which are general and uniform throughout the state, operating alike upon all persons and localities of a class, or upon those who are brought within the relations and circumstances provided for, are not objectionable for want of uniformity or as class legislation. *State v. Berka,* 20 Nebr., 375; *County of Lancaster v. Trimble,* 33 Nebr., 121. "The classification of the cities of the state into classes and sub-classes, and the conferring upon them of corporate powers by acts of the legislature of a general nature, yet the provisions of which are applicable to but one of such classes or sub-classes, is not repugnant to any provision of the constitution." *State v. Graham,* 16 Nebr., 74. "An act is general and not special if it operates alike on all persons or localities of a class, or who are brought within the relations or circumstances provided for, the classification so adopted by the legislature having a basis in reason and not being purely arbitrary." *Livingston Loan & Building Ass'n v. Drummond,* 49 Nebr., 200. To the same effect are: *Hunzinger v. State,* 39 Nebr., 653; *McClay v. City of Lin-*

*coln*, 32 Nebr., 412. If, as had been repeatedly held, and correctly so, we think, it is competent for the legislature to classify the cities of the state, and provide different laws for the government of each class, then we think it logically follows that the inhabitants and property, including that of corporations within each of the different classes, are controlled by the charter provisions applicable to that class, even though differing from provisions in some other charter, and that the enactment of laws and regulations affecting alike all street railways of any one class can not be said to be obnoxious to the constitution because of lack of uniformity.

It is also urged that the statute violates the constitution wherein it is provided that "the legislature shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes." This section has received consideration from this court in *State v. Wheeler*, 33 Nebr., 563 and *German-American Fire Ins. Co. v. City of Minden*, 51 Nebr., 870, 874. Speaking with reference to the first case, it is said in the latter: "It is quite evident that it [the act considered in the first case] was held bad because it was an attempt by the legislature, not to empower municipal corporations to impose a tax for corporate purposes, but to impose by the legislature itself a tax for corporate purposes on the inhabitants and property of the municipal corporation, this being forbidden by section 7, article 9, of the constitution." If, then, the legislation now objected to is, in effect, the imposition of a tax by the legislature itself on the property of the defendant, and not an authority to the city to do it, the act would be void. We are constrained to the view that the act does not itself attempt to impose any tax on the defendant company. It is primarily a regulation requiring it, in certain instances, to pave its right of way to conform to the street improvement as directed by the city authorities, and upon failure and refusal so to do, provides that the city is authorized and empowered to assess

its property for the costs and expenses of making such improvement. It purports only to authorize the city to levy the proper assessments after paving has been determined upon, and the refusal of the street railway company to discharge the obligation resting upon it to pave at its own expense its right of way in conformity with the improvement made by the city on the remainder of the street. Although the question is not directly raised, the validity of legislation of the character under consideration is recognized in *Horbach v. Omaha*, 54 Nebr., 83, where under the police power it is held the legislature may authorize the city to require owners of lots, upon which stagnant water may accumulate, to fill and grade the same, and upon refusal, the city is authorized to perform such work and levy a special tax sufficient to pay the cost and expense as other special taxes are levied and collected. The two cases, for the purposes of the question under consideration, are similar in principle, and differ only, if at all, in the nature of the power exercised. The legislature has not undertaken, nor can it itself impose a tax for municipal purposes for street paving required to be done by a street railway; nor is the city authorized to do so until after the improvement has been determined upon and projected, nor until the street railway company shall have neglected and refused to comply with the legislative requirement. This is not imposing a tax by the legislature upon municipal corporations or the inhabitants or property thereof for corporate purposes.

The constitutionality of the act of the legislature under consideration is by the defendant company also questioned, because, first, the act provides for a judgment *in personam*, and, second, that no provisions are made for redemption after sale of property on which the lien rests in conformity with section 3, article 9, of the constitution, in respect of the right of redemption from sales of real estate for taxes and special assessments.

The first question, we think, is prematurely presented, and is not necessarily involved in a proper disposition of

the case upon the record as presented to us.  At most, the act in this respect would be invalid in so far only as it affects the city's right to a personal judgment against the defendant.  The right given, or attempted to be given, to a personal judgment only provides an additional remedy by which satisfaction may be obtained for obligations created by the levy of special assessment, and, if invalid, would leave the remainder of the act complete in itself and capable of enforcement to the extent of the sale of the property to which the lien attached if valid in other respects.  Conceding all that is contended for by the defendants in respect of the invalidity of the act authorizing a personal judgment for the amount due for special assessments for paving, the act providing for a lien for such sums, and the enforcement of the same by a sale of the property, is not thereby and for that reason void and of no effect.  In the case at bar, all that is sought to be accomplished is the enforcement of the lien under the statute on the property specifically mentioned therein. When a personal judgment is sought, if one should be, the defendant can more properly interpose the defense now presented.  For the purposes of this case, and the enforcement of the lien, the act, we are satisfied, is constitutional.  The objections therefore can not be upheld.

As to the second proposition, section 3 of article 9 of the constitution is as follows: "The right of redemption from all sales of real estate for the non-payment of taxes or special assessments of any character whatever, shall exist in favor of owners and persons interested in such real estate, for a period of not less than two years from such sales thereof; *Provided*, that occupants shall in all cases be served with personal notice before the time of redemption expires." Under the above provision, the right of redemption is made secure to all those whose property as therein mentioned may be sold for non-payment of taxes or special assessment, and this guaranty is made secure to the parties entitled thereto in the absence of statutory provisions more definitely pointing out the

method by which the redemption may be made. This view of the constitutional provision quoted must have been entertained and borne in mind by this court when, in its prior utterances, it has declared that the right to foreclose a lien for taxes for general revenue exists in favor of the tax purchaser without any notice of redemption under his tax certificate in accordance with the constitutional provision quoted (*Van Etten v. Medland*, 53 Nebr., 569); and where it is declared, as it has been, that a county may enforce its lien for taxes for general revenue purposes after delinquency, when the right to a sale of the property has accrued, by an ordinary equitable action in foreclosure, as was done in the case of *Grant v. Bartholomew*, 57 Nebr., 673. We apprehend no insurmountable difficulty will be encountered in holding the section of the constitution quoted as self-executing, and giving to all parties who come within the provisions of that section the right to redeem real estate sold for taxes as provided therein. No difficulty would be experienced in redeeming from sale of real estate in foreclosure proceedings of a lien for taxes, after sale and before confirmation, by paying the judgment, interest, costs and accruing costs; and we see no reason why a further extension of time after sale in which redemption might be had would in any way prevent consummation of the object contemplated by the section, and at any time within the period therein mentioned; nor do the constitutional provisions appear inadequate to fully conserve the rights of parties in regard thereto. The proceedings are in a court of equity, and it has control over all the steps therein taken until the rights of all parties have been fully adjudicated and finally determined under the provisions of both the constitution and the statute. The objections raised as to the question just considered are untenable.

The method of procedure adopted by the city council in levying the special assessments against the defendant, as well as the constituent companies consolidated with it, is made the basis for the contention that the levy as

made is void, and for that reason imposes no liability against the property against which the taxes are sought to be enforced in this action. It is argued that because these levies were made by resolution of the city council, and not by ordinance, they can not be sustained. It appears from the record that the different paving districts were created by ordinance providing for the improvement of the streets included therein, and the payment of the costs and expenses thereof by special assessment to be levied upon the property benefited in such districts. Among other things, section 68* of the city charter act (Session Laws, 1887, ch. 11) provides that the city shall have the power by ordinance, first, to levy taxes for general revenue purposes; and, second, to levy any other tax or special assessment authorized by law. These two subdivisions are followed by others to the number of sixty-three, some of which, it is quite obvious, were not to be complied with or action taken thereunder "by ordinance," as indicated by the first part of the section quoted, which, if given a literal construction, applies to all of the subdivisions alike.

By subdivision 63 it is provided, in substance, that the city council shall have power to open, grade, pave, and otherwise improve the streets within the city in such manner as they may deem proper; and shall have power to levy and collect special taxes and assessments on abutting property to pay the costs and expenses of such improvements; that they shall have power to pave, and, for that purpose, to create suitable paving districts; and that the cost of paving, when done upon the petition of abutting property owners, shall be assessed upon the lots specially benefited, and the total cost shall be levied at one time.

By section 74, chapter 14, Session Laws, 1889, it is provided, with reference to special assessments of taxes for local improvements, that such assessments shall be

---

*The reference is to Session Laws, 1887, pp. 235-265. This section, as amended, appears as 67 on pp. 207-218, Compiled Statutes, 1899.— REPORTER.

made by the city council at any meeting by resolution, stating the cost of construction, or repairs, or improvements, and the benefits accruing to the property in the district to be taxed; that the vote thereon shall be by yeas and nays and recorded in a book kept for that purpose, with notice of the time and the purpose for which the meeting is held; and it is further provided that, after such assessment, the council shall sit as a board of equalization, as provided for by section 50.

Under section 50 the council is given power to act as a board of equalization to equalize the assessments, correct errors, etc., and shall have the same power as the board of county commissioners have in similar cases; that in all cases, before special taxes shall be finally levied, it shall be the duty of the council to sit as a board of equalization for the purpose of equalizing such proposed levy of special taxes or assessments, correcting any errors, etc., and shall continue in such session for not less than two days; shall hear complaints; and that it shall be its duty to equalize any such assessments, by correcting errors therein, and thereupon said assessment and special tax shall be finally levied.

Regarding the method for exercising the power conferred by statute upon municipal corporations, we understand the rule to be in this state that where a special mode of action is prescribed, that method must be followed in order to validate the action taken thereunder; but where no particular method for the exercise of the power is specified, city authorities may act by resolution or other appropriate manner, and such action will be as effectual as it would be by ordinance for the same purpose. *Fulton v. City of Lincoln*, 9 Nebr., 358; *McGavock v. City of Omaha*, 40 Nebr., 64; *State v. Birkhauser*, 37 Nebr., 521. With respect to the authority given by subdivision 63 of section 68, *supra*, to pave streets and levy assessments therefor, we regard that subdivision as respects the subject of levy of special taxes, as independent of subdivision 2. By the provision of subdivision 2, for the

levy of taxes, it is evidently meant such special assessments and taxes the levying or imposition of which is to be performed by an independent act or ordinance complete in itself, and of such taxes as are more permanent and continuing in their nature than those of special assessments for local improvements. It is at once obvious by an inspection of the different subdivisions of section 68 that they can not refer back to the preamble contained in the beginning of section 68, authorizing the city by ordinance to do certain acts, followed by sixty-three subdivisions. Many of these subdivisions, while classed as such, in fact are sections, "as much so as the other sections in the chapter." *State v. Babcock*, 23 Nebr., 134. Classing many of these subdivisions as sections, as we think they should be, we find complete, ample and independent authority for the levying of the tax, and in the manner adopted by the council. The authorization given by section 74, *supra*, to levy special assessments in the first instance by resolution, which is to become the permanent levy, except as it may be modified by equalizing assessments and correcting errors, negatives the idea that the legislative intendment was to thereafter require another ordinance to complete the levy. It also appears to us, from a consideration of all sections related to the subject, that the legislature intended that after the levy had been made by resolution, as recited by section 74, and the council should sit as a board of equalization for the purposes mentioned, it should "thereupon," and without the delay incidental to the passage of a formal ordinance, make the final levy substantially after the manner of county commissioners, who levy taxes for general revenue purposes after performing their duties as a board of equalization. Again, it is provided by ordinance that a paving district should be created, in which ordinance provisions are made for the improvement of the streets by levying special assessments on property benefited thereby, the enactment of which may, we think, be followed by the successive steps necessary to carry

the provisions of such ordinance to a final conclusion by resolution or other proper action; and yet all such action is embraced in the original ordinance, and may be said to be under, by or pursuant to the same, within the meaning of the statute.

In four of the paving districts, viz., Nos. 6, 7, 10 and 11, the validity of the levy of the special assessments is challenged on account of the alleged insufficiency of the petitions of property owners praying for the creation of such districts and the improvement of the streets therein lying; it being urged that the action of the council in respect to such levies is void for want of jurisdiction. Most all of the facts upon which the judgment of the trial court is based were stipulated by the parties. With respect to the question now under consideration, it appears that the necessary number and foot frontage of petitioners as property owners joined in a request for the creation and improvement of the several paving districts; but as to the four above mentioned, the necessary number of owners of foot frontage did not individually sign the respective petitions, but were represented thereon by others, whose authority for representing those for whom they signed did not appear of record. Whether or not such authority was in fact given by the owners at the time, or whether the signatures were afterwards sanctioned and ratified, does not appear. It is reasonable to suppose that the city council investigated the sufficiency of the different petitions and found them to have been duly executed and legally presented. On their face all these petitions were sufficient. The record on which the city council acted, as it appears, affirmatively shows the required petition necessary to give the council jurisdiction to act in the matter. No protest or objection to the sufficiency thereof was presented. The case is not one where there is an entire absence of any petition, or where the petition on its face shows a want of the required number of signers to give the council authority to act; nor is it a case where the alleged insufficiency of the peti-

tions was presented to the council and an appeal taken from adverse action thereon. Even if some of the signatures were unauthorized, it is highly probable that the same were thereafter sanctioned and ratified by the owners, so as to preclude them from questioning the authority of the city council to act; and if such be the case, we are at a loss to understand upon what principle of the law the defendant in a collateral proceeding at this late date can complain. The attack in this respect, made on the action of the city council, is in a collateral proceeding, and if, after the lapse of a decade, when all have acquiesced and acted upon the assumption that the council had authority and jurisdiction to act, and much valuable property has borne the burden of the tax levied, been sold and transferred in faith of the legality of such proceedings, it may now be shown that owners of property were represented on the petition without authority, and thus render void all the proceedings had thereunder, the rule as to jurisdiction acquired by inferior tribunals has been carried to an extent, the disastrous consequences of which can scarcely be comprehended.

There exists, we apprehend, a clear and definite distinction between the rule recognized in this court, that in the levy of special assessments the record must affirmatively show compliance with all the conditions essential to a valid exercise of the taxing power, and the circumstances of the present case, where, in another proceeding, irregularity is sought to be established and made the basis for declaring the action taken without jurisdiction and therefore void. The rule laid down in *Ellis v. Karl*, 7 Nebr., 381, would seem applicable to the proposition under consideration. It is there held that a petition for relocation of a county seat, when determined by the board to be sufficient, can not afterwards, and in a collateral proceeding, be attacked on the ground that a large number of the names attached to the petition were fictitious, forged, or names of non-residents, leaving of the genuine signatures an insufficient number to authorize

the calling of an election. Neither the genuineness nor the sufficiency of the petition being questioned before the board, it was held that a suit could not be maintained to restrain the removal of the county seat because of the defects of the petition. However, as we view the case, so far as the defendant is concerned, it is immaterial whether or not the paving petitions had the required number of signatures. Upon the improvement of the street by the city council, it became the duty of the street railway company to pave its right of way in conformity with such improvement under the provisions of the statute, entirely aside from, and independent of, the question of the petition praying for the establishment of paving districts and the improvement of the streets therein. The authority to require the street railway company to pave its right of way does not depend upon the jurisdiction of the city council to establish paving districts and engage in the work of improving the same by reason of a petition asking for such improvement; but on the statutory ground that, when streets are improved by the city authorities, it is incumbent upon street railways occupying a part of the streets so improved to pave in conformity therewith the portion they occupy, and upon failure or refusal so to do, the council is authorized to perform the work, and by special assessment make the cost thereof a charge on the property of such railway company. The city council has authority to pave and otherwise improve a street independent of the provisions providing for the creation of paving districts, and levying special assessments for the cost of local improvements on abutting property owners specially benefited thereby. *State v. Birkhauser*, 37 Nebr., 521. The power to levy the tax upon the street railway company for the cost of paving between its tracks is independent of the power to create districts and improve the streets therein upon petition and at the cost of the property owners abutting thereon. The difference in the source of authority is fully recognized in the following cases: *Conway v. City of Rochester*,

51 N. E. Rep. [N. Y.], 395; *Storrie v. Houston City St. R. Co.*, 46 S. W. Rep. [Tex.], 796; *State v. Jacksonville St. R. Co.*, 10 So. Rep. [Fla.], 590.

In the assessments levied against the defendant's property are certain items of charges for cost of grading streets which are included as a part of the cost for the general improvements made at the time of the paving of such streets. It is argued that inasmuch as the statute recognizes grading as a distinct improvement, for which special assessments may be levied, the charge thereof can not be charged as expenses of paving under the authority given by the statute to collect the costs and expenses for paving the right of way, when a street railway company fails and neglects to perform its obligation in that respect. It is true, we think, that grading as a distinct and independent improvement may be engaged in by the authorities of a city, and the cost thereof levied against property benefited in the manner provided for by law; and in a case where the improvement consists only of bringing the streets to an established grade, some doubt would probably arise as to authority to require a street railway company to pay the cost of such grading as to its right of way under the provisions of the statute authorizing the levy of costs and expenses of paving, as in the case at bar. In this case, however, as we understand the record, the scheme or plan contemplated and had for its main object the paving of the streets, and the grading necessary to accomplish that purpose would, under such circumstances, be regarded as incidental to the main purpose, and a proper charge as and for the cost and expense of paving that part of the street required to be improved by a street railway company, and as such may be properly levied as a special tax and assessment for paving under the provisions of the statute under which the city acted. We understand the general rule to be that where there is a requirement to pay the cost of paving, as mentioned in the statute, by such requirement there is included and contemplated all inci-

dental work necessary and required to accomplish the main object, and that the cost of grading, when done as a part of the general paving improvement, is properly assessed as a part of the cost of such paving in contemplation of the statute. In this view we are supported by a number of decisions which seem to us to be founded in reason and sound in law. *Schenley v. Commonwealth*, 36 Pa. St., 29; *Dean v. Borchsenius*, 30 Wis., 236, 244; *Williams v. Mayor*, 2 Mich., 560; *Steckert v. City of East Saginaw*, 22 Mich., 104; *State v. Council of Elizabeth*, 30 N. J. Law, 365.

With respect to the items of charges under consideration, it also appears that the defendant company appeared before the city council acting as a board of equalization in pursuance to notices issued for that purpose and entered objections and protests against the assessment of these items as proper charges for the improvements for which the assessments were made, which objections were overruled by the city council, and from which ruling no appeal was taken. The city council was exercising authority conferred upon it in adjudicating such matters, and the defendant, we think, is estopped in this action from contesting the justness of these charges. Had it been dissatisfied, it should in a direct proceeding have sought a review and modification of the action of the city council in including such items as proper charges to be levied and collected as special assessments, and having neglected so to do, the question must be considered as having been finally adjudicated in these proceedings. *Webster v. City of Lincoln*, 56 Nebr., 502.

Complaint is made because interest was computed on the different levies for special assessments at the rate of twelve per centum per annum, and the judgment rendered decreed to draw interest at the same rate. We think this action was in strict accord with the provisions of the statute, and in conformity with the well settled rule of this and other jurisdictions with respect to the

rate of interest allowed on delinquent taxes levied for either general revenue purposes or as special assessments. In *Osgood v. Grant*, 44 Nebr., 350, it is held that, as to general revenues where delinquent taxes draw interest at the rate of ten per centum per annum, such rate was proper, and that the statutory rate continued after the judgment was rendered. We see no difference in principle in the case at bar and the one referred to. By the different provisions of the statute heretofore alluded to, it is specially provided that the cost and expense of paving a street railway right of way, where the company neglects or fails in its obligation, shall be levied as a special assessment and collected as other taxes and special assessments. In cities of the class that plaintiff belongs to, the statutory provision is that all delinquent taxes, both general and special, shall draw interest at the rate of twelve per centum per annum from the time they become delinquent. The reason for the legislature fixing a higher rate of interest on delinquent taxes than is ordinarily the rule is discussed to some extent in *Kittle v. Shervin*, 11 Nebr., 65, 72, by Judge COBB, writing the opinion of the court, and it is perhaps unnecessary for us to attempt to elaborate thereon. The statute unmistakably provides for the rate, and the action of the court in this regard is in strict conformity therewith. Statutory enactments of the character under consideration are very general, as will be seen by reference to the following authorities on the subject: *Ex parte Lynch, Trustee*, 16 S. Car., 32; *Craig v. Flanagin*, 21 Ark., 319; *Mulligan v. Hintrager*, 18 Ia., 171; *Nance v. Hopkins*, 78 Tenn. [10 Lea], 508; *Potts v. Cooley*, 56 Wis., 45; *Tobin v. Hartshorn*, 69 Ia., 648.

It is also claimed that many of the different assessments sought to be recovered in this action are barred by the statute of limitations, and we are cited to section 11 of the Code providing that an action shall be brought within four years on a contract not in writing, and upon a liability created by statute other than a penalty or a

forfeiture; and section 13, limiting the time as to a re-
covery for the two latter causes to one year. We under-
stand the lien in cases of this kind to be perpetual in its
character, and the provision as to limitation of actions
in general can not be invoked when it is sought to en-
force such lien. It is specially provided by section 50
that the lien created by the levy of special assessments
and taxes shall be perpetual. We hardly think the legis-
lature would do so foolish an act as to continue the lien
indefinitely, while at the same time an action-for its en-
forcement was barred under the general statute of limita-
tions. The subject has received a construction in *Wygant
v. Dahl*, 26 Nebr., 572, wherein it is said: "Whatever may
be the remedy for the collection of delinquent taxes,
*   *   *   the tax lien thereon has been constantly pre-
served, constantly recognized and reiterated by the legis-
lature on every proper occasion; and this right and lien
is recognized as unaffected by the lapse of time, if it is
within the sense of language to accomplish it." A clear
distinction is recognized between a lien enforcing a pri-
vate right and one enforcing a public right. This case
being of the latter class the statutes can not be invoked
as a ground for barring the action for the enforcement
of the lien created by the provisions of the statute.

The foregoing covers in the main the essential points
presented in regard to the validity of the sections of the
statute assailed and the legality of the several acts of
the city authorities taken in pursuance of legislative
authority. We now approach, for consideration, the case
in another aspect, namely, the nature and extent of the
several liens arising by virtue of the statute and the ac-
tion of the city council, and the property against which
the lien attaches, as well as the question of priority of
liens as between the plaintiff city and the defendant
mortgagee.

In the fourth conclusion of law it is held by the trial
court, in substance, that the consolidation of the several
companies imposed upon the consolidated company all

duties, obligations and liabilities of the constituent companies, as well as giving it the rights and privileges of such companies; that under the articles of consolidation the defendant company assumed all legal liabilities, and hence would be liable for all taxes and assessments legally levied against each of the constituent companies, and the liens arising thereby upon merger by consolidation attached to the new property in its entirety or as one property. The conclusion reached by the trial court in this respect is excepted to, and it is asserted with much positiveness that the liens created by the several levies attached only to the property and lines of the company against which assessed, and the fact of after consolidation can not have the effect of extending such liens to all the property brought together by the act of consolidation. In other words, it is contended that the liens created by the several levies against different properties are not affected by the after acts of consolidation and can only be enforced as against the property to which they attached at the time and by virtue of the levy as then made. These questions have caused us not a little labor and investigation in an effort to apply sound legal principles and reach a correct conclusion. We are disposed to the view that, ordinarily, a lien on specific property afterwards merged with other property by companies consolidating will not extend to such other property on which it was not a lien at the time of the consolidation. This of course is subject to the rule of betterments and accessions. That such a lien can not be diminished or impaired is a rudimentary principle of justice acknowledged by all, and which principle in this state has been incorporated into the statutes. The lien in question may be regarded as one for taxes. It is so denominated in the statute and is treated as other taxes levied for general purposes or as special assessments. It is made to cover all the property of a street railway company against which it is assessed as one property. The object of the statute in preserving liens on property consolidated unimpaired is obviously for the

benefit of those entitled to such liens. The consolidated
company, by operation of law, assumes all the burdens of
the constituent companies and correspondingly succeeds
to all benefits, rights and privileges. In the several acts
of consolidation of the different street railway companies,
by express terms, the new company assumed all the con-
tracts and indebtedness of the constituent companies.
While the several sums due for taxes levied by special
assessments did not arise under contract, nor are they
items of indebtedness in the technical sense of the term,
yet it seems apparent that the consolidated company,
by its own acts, burdened itself with all obligations of
the companies merged into it by the act of consolidation.
It certainly did so by operation of law. It was charged
with notice of these several assessments, and doubtless
had actual notice as well. By the several acts and agree-
ments of consolidation, the object to be accomplished was
to bring the several companies into one new company.
The old companies lost their identity and individuality
and became merged into the new company. The prop-
erty was by such acts brought together as one complete
whole, and has since been operated as such. The con-
stituent companies and their several properties have been
swallowed up by the new one. The tax lien, says the law,
shall exist against the property as one property. The
different parts before consolidation as a whole have been
joined, so that at the time of the suit but one property
existed against which the action could be directed. It
would be difficult, indeed, if not impossible, to divide the
new property into fractional parts so as to correctly
represent the constituent companies. While in a meas-
ure, it is probably true, that it can be divided up again,
and if required should be as far as possible, if any rights
are to suffer by not doing so. But can the consolidated
company be heard to complain and demand as a legal
or equitable right that the division shall take place, the
liens separated, and the property sold in fractional parts
and by piecemeal? Tax liens existed against the prop-

erty of each of the constituent companies when consolidated with another company. The defendant company acquired the property of the electric company, against which certain of the liens existed, and it would seem that as to such acquired property the lien against the defendant would by that act extend over the acquired property as though it had been purchased, or added to the original property by extension of its own tracks. And for the same reason, the lien of the electric company would, in bringing the two properties together and making of them but one property, extend over the lines of the new company "as one property," the liens being for taxes, and against the property as a whole, and by consolidation the new company being substituted, as it were, for the company merged into it, it would follow as a logical deduction that the substituted company's property is likewise charged with the lien on all its property in its entirety and as one entity or one piece of property. Not only does this result follow because of the nature of the lien attaching to all the property against which assessed and the company substituted therefor, but also on the ground of public policy, which requires, except as against those having conflicting liens whose rights are prejudiced, that such property shall be kept intact and operated as a whole for the benefit of the people in the discharge of a duty which such corporation owes to the public. The rule is, we think, and ought to be, that the sale of parts and parcel of a line of street railway ought not to be required and enforced, except where, to preserve vested rights and maintain unimpaired liens thereon, it becomes imperative to do so.

In Elliott on Railroads it is said at section 790: "While it is probably true that there may be a lien on the right of way of a railroad for a local assessment, where such assessment is authorized by statute, the manner of enforcing such assessment is not clearly settled. The right of way of a railway company is a part of the company's property, without which it could not perform the duties

it owes to the public.   To subject a portion of the right
of way to a sale to enforce a local improvement would
greatly embarrass, if not entirely destroy, the ability of
the company to perform its public functions.   The rights
of the public are regarded as superior to the rights of
any individual, or group of individuals.   Local assess-
ments are usually levied on a small portion of a railway
right of way, varying from a few feet in length to miles
in length.   To permit such portion to be sold would pre-
vent the operation of the road, and, on grounds of public
policy, it is held that the ordinary remedy of enforcing
the collection of a local assessment by a sale of the prop-
erty benefited does not apply to the enforcement of an as-
sessment against the right of way of a railway company.
While there is a conflict of authority on this subject, the
decided weight is that the right of way, if sold to pay
the assessment, must be sold as a whole and not in broken
fragments.   'The public have a right to have a railway
remain an entirety, and it would be destructive to public
interest to permit it to be broken up into disjointed and
practically useless fragments.' "

The views above expressed are supported by the fol-
lowing authorities: *Farmers Loan & Trust Co. v. Canada
& St. L. R. Co.*, 127 Ind., 250; *Plymouth R. Co. v. Colwell*,
39 Pa. St., 337, 80 Am. Dec., 526.   The principle that rail-
road property is assessed as a unit requires the con-
clusion that the lien for taxes attaches to the entire prop-
erty.   *Georgia v. Atlantic & G. R. Co.*, 3 Woods [C. C.], 434,
437; *Thompson v. Abbott*, 61 Mo., 176.

By different acts of consolidation all of the street rail-
way companies against which special assessments were
levied, except the Rapid Transit Company, were consoli-
dated with and merged into the defendant railway com-
pany at the time of the execution of the mortgage under
which the defendant trust company claims.   By these
several acts of consolidation, and the merging of the old
into the new, the liens before existing upon the property
of the constituent companies extended to the new com-

pany's property as one property. This being true, it is at once apparent that the mortgagor could give no greater rights to the mortgagee than it then possessed, and, therefore, the mortgage was made and accepted subject to the lien then existing for the said several assessments against the property in its entirety. It also appears by the record that in the trust company mortgage, which covered at the time of its execution all the property of all save the Rapid Transit Company, were provisions for the payment of liens against the property mortgaged for special assessments to pay cost of paving, for which it was stipulated the bonds to be sold in an amount necessary for that purpose should be a first lien on that property. The mortgagee has by these provisions recognized the existence of the liens attaching to the property at the time of the execution of the mortgage, and can not now be heard to object to the enforcement of the same.

At the time of the execution of the mortgage the Rapid Transit Company, against which certain liens existed for special assessments, was an independent company, which was afterwards consolidated with the defendant company, and the question therefore arises as to the relative rights of the city and the mortgagee with reference to their respective liens against the property. The liens are conflicting and must be adjusted according to some recognized principle of law. Can the lien of the city for special assessments levied on the property of the Rapid Transit Company extend to all the property of the new company after consolidation prior to and in disregard of the lien theretofore created on the property of the original company by virtue of the said mortgage?

By section 8, article 7, chapter 72, Compiled Statutes, 1899, it is specially provided, with respect to street railway corporations being merged into a new corporation by consolidation, "That all the rights of creditors and all liens upon the property of either of said corporations shall be and hereby are preserved unimpaired, and the respective corporations shall continue to exist so far as

may be necessary to enforce the same." At the time of the consolidation the trust company possessed a lien on the property of the defendant company to the extent of the sum due on the bonds sold and secured by the mortgage held by it as trustee. The city held a lien against the same property for special assessments levied, and also a similar lien on the property of the Rapid Transit Company consolidated with it. The liens were conflicting, and to retain each unimpaired necessitated a finding of the several sums due against the respective properties and the priority of each. We do not understand upon what principle of law the lien existing against the property of the Rapid Transit Company can be made a prior lien upon the property mortgaged to the defendant trust company. This, it seems to us, would be an impairment of the lien to that extent in violation of the statutory provisions quoted, as well as the fundamental principle against the impairment of the obligation of a contract without the consent of the parties thereto. We do not think it a sufficient answer to say that the value of the property acquired by consolidation from the Rapid Transit Company exceeded the tax lien with which it was burdened, and which therefore might be spread over the entire property without prejudice to the interest of the mortgagee. Of the value of each of the properties we are not fully informed by the record. We are, however, satisfied that the defendant trust company may rightfully insist that the property on which it holds a lien shall not be charged, beyond the terms of its contract, with a lien not existing when its rights thereto attached. As between conflicting equities and lien-holders the rule is settled and well grounded in principles of equity that the liens follow the property into the consolidated company, and one can not take precedence, by reason of such consolidation, over other liens already existing. The lien of the defendant trust company on all of the property of the street railway company before consolidation can not be subordinated to the lien of the levy for special

assessments on other property afterwards acquired by consolidation, and in this respect we think error was committed.

It is also urged that the trial court erred in awarding the city a prior lien for certain special assessments levied after the mortgage lien was created. The statute on the subject is as follows: "No mortgage, conveyance, pledge, transfer or incumbrance of any such property of any such company or person, or of any of its rolling stock or personal property, created or suffered by any such company, or party, after the time when any street or part thereof, upon which any such street railway shall have been laid, shall have been ordered paved, repaved, macadamized or repaired, shall be made or suffered, except subject to the actual or prospective lien of such special taxes, whether actually levied or not, if such levy be in contemplation." (Compiled Statutes, 1899, ch. 13a, art. 1, sec. 79.) The lien on the property assessed is only by virtue of the statute. The legislature has, for reasons no doubt appearing to it as sufficient and satisfactory, enacted that the tax lien should be prior if the improvement is in contemplation, whether the taxes are actually levied or not. By the language used it is contemplated that if the improvement has been projected and is under way, that is, if the street "shall have been ordered paved," no lien shall be created except subject to the prospective lien. The language of the statute excludes the idea that under all circumstances the lien for special assessment shall be superior to all other liens. If force and effect be given to the language of the statute, and the words used be taken in their ordinary and natural meaning, the conclusion is irresistible that an incumbrance placed on the property before street improvements are projected is prior to a lien for special assessments levied thereafter for such improvement. It is not for us to engage in judicial legislation or trench on the clearly expressed meaning of the language used by the legislature in its enactment of law. The legislature having deter-

mined under what circumstances special assessments levied on property of street railway companies for street improvements should be a first lien on the property assessed, it follows under any recognized rule of construction that valid liens on the property before any improvements are made or contemplated within the meaning of the section can not be subordinated to the statutory lien. We observe no escape from this conclusion.

Counsel for the city insists that the general provisions, as to assessments levied generally being liens on the property assessed prior to all others, should likewise govern in the case at bar. We can not so construe the law without ignoring entirely the language quoted, and this we are not at liberty to do. Were it not for such language, and relying only on the general provisions with reference to special assessments, we could readily agree with counsel in this regard. The principle of subordination of liens for taxes to liens created by contract has been also recognized by the legislature in the act providing that a general lien for taxes shall exist in favor of the state on all the personal property of the tax debtor from and after the time the assessment books are placed in the hands of the county treasurer or tax collector for collection; and yet it is held that a mortgage in good faith executed on such property prior thereto is a superior lien to that of the lien for taxes. *Reynolds v. Fisher*, 43 Nebr., 173; *Farmers Loan & Trust Co. v. Memminger*, 48 Nebr., 17; *Chamberlain Banking House v. Woolsey*, 60 Nebr., 516.

Certain sums were charged against the defendant company as and for special assessments for the purpose of securing certain obligations assumed by the company under an ordinance providing for the laying of its tracks in streets which had already been paved. The ordinance provides substantially as follows: That when a street railway company desires to construct its tracks upon any of the paved streets of the city, it shall file with the council a written application for a permit, in which should be

stated where the proposed track is to be laid, and it should also contain an agreement to abide by and conform to all requirements of the ordinance; that upon the filing of such application, the council shall cause an estimate to be made of the cost of the paving between the rails of such proposed track, and the company is required to pay for such privilege as follows: If the proposed tracks are constructed within one year after the cost of such paving has been levied and assessed, then the company is to pay the whole of the original estimated cost of paving between the rails of its tracks; if constructed after one year and within two years, then it should pay nine-tenths of such cost; and for each year after, a reduction of one tenth of the original cost shall be made. The company is also required to remove and relay paving displaced in such track construction at its own expense; the amount to be paid, it is provided, may be made by paying the whole sum due within fifty days from the date of the levy or date of the permit for such proposed construction, or in equal annual installments of one-tenth of the original cost, deferred payments to bear interest the same as special assessments upon real estate for paving; payments to be made to the city treasurer and by him apportioned between the intersection and district paving funds, according to the amounts of such taxes in intersections and districts; and the same apportioned to the district funds to be divided among the several parcels of real estate assessed with the cost of such paving in accordance with the ratio of such assessments as a credit upon the assessments thereon; that such company shall also execute and deliver a good and sufficient bond to the city for double the amount charged, with good and sufficient sureties, conditioned, that the company would pay the sums of money due as provided and comply with all the provisions of the ordinance; that upon the filing of the bond and compliance with the preceding requirements of the ordinance, the council may grant a permit to such company to construct its tracks as desired, and

15

the company thereupon be authorized to proceed with the work. It will be observed that there is nothing in the ordinance which authorizes the levying of a tax, or the making of the sums due under the permit granted, a lien upon any of the property of such company. The company was required to give a bond for the faithful performance of the obligations it assumed in securing the permit, and it is quite evident that reliance was placed upon such security, and not upon a lien which if it might be created in fact never was. It is not to be doubted that the liability was a civil one existing against the company, to be enforced as all other civil liabilities, with the additional security given by the bond required to be executed in connection with the privilege obtained to lay the tracks in the streets already paved. There is no authority, however, for the levying as a special assessment the amounts due under the terms of the ordinance; nor do we understand that such was in fact done. The sum due, it appears, was simply entered upon the records of the city by the clerk as though it had been levied as a special assessment. No authority existed for making the several sums due under the ordinance a lien on the property of the defendant, as would be in the case of levies of special assessments under the statute for paving a right of way in conformity with a street improvement. Without authority, no lien can exist. Says Judge Cooley in his work on Taxation (2d ed., p. 448): "Municipal corporations, it need hardly be said, have no authority to create liens, by ordinance or otherwise, when none has been expressly conferred upon them." This rule is supported by *City of Philadelphia v. Greble*, 38 Pa. St., 339; *Eschbach v. Pitts*, 6 Md., 71; 2 Desty, Taxation, 734. It is quite clear, and, as we understand, conceded by counsel for the city, that no legal grounds exist for holding the sums due under the terms of the ordinance a lien upon the property of the defendant company.

There is no force in the argument that the action is

brought without the authority of the city. The city is by statute authorized to sue and be sued in its corporate name. The action is brought by it by its proper law officers, and the authority therefor, until the contrary is shown, will be presumed. It is not required in the first instance to plead or prove that the city authorized the bringing of the action.

A mistake in computation of interest of some $6,000 is admitted, and a remittitur has been filed; but as the cause must be reversed for reasons hereinbefore given, this matter can be corrected in a subsequent proceeding.

The judgment must be reversed and the cause remanded for further proceedings according to law and in conformity with the views expressed herein.

REVERSED AND REMANDED.