## SCHOOL DISTRICT *v.* INSURANCE COMPANY.

The act of the legislature of Nebraska approved Feb. 2, 1875, entitled "An Act authorizing School District Number 56, of Richardson County, to issue bonds for the purpose of erecting a school building, procuring a site therefor, and for setting apart a fund to pay the same," is void, it being in conflict with sect. 1, art. 8, of the Constitution of that State of 1866–67, which declares that "the legislature shall pass no special act conferring corporate powers."

ERROR to the Circuit Court of the United States for the District of Nebraska.

The facts are stated in the opinion of the court.

*Mr. E. Estabrook,* for the plaintiff in error.
*Mr. Willard P. Hall, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The defendant in error recovered a judgment in the Circuit Court of the United States for the District of Nebraska against the plaintiff in error for the sum of $2,554.70. The judges of the Circuit Court certified a difference of opinion on three questions of law arising in the case, only one of which is necessary to be considered here, namely: "Whether the said act of the legislature of Nebraska, approved Feb. 2, 1875, recited in the bonds (the coupons of which are in suit), is in conflict with sect. 1 of art. 8 of the Constitution of the State, because the same is a special act conferring corporate powers; and also whether it is in conflict with sect. 19 of art. 2 of the Constitution of the State because it contains more than one subject."

Indeed, we only propose to consider the first branch of this double question. Sect. 1, art. 8, of the Constitution of Nebraska of 1866–67 reads thus: "The legislature shall pass no special act conferring corporate powers."

The act of Feb. 2, 1875, is entitled "An Act authorizing School District Number 56, of Richardson County, to issue bonds for the purpose of erecting a school building, procuring a site therefor, and for setting apart a fund to pay the same."

It authorized the school board to issue bonds to the amount of $20,000, payable in ten or twenty years, with ten per cent

per annum interest, for that purpose, and required a vote of a majority of the electors of the district before they could be issued. It forbade the sale of these bonds at less than eighty-five cents on the dollar. It also enacted that all the penalties and forfeitures thereafter imposed, for any breach of the ordinances of Falls City, and all money for licenses to sell or traffic in liquors, or any other commodity or license to transact other business, should be paid over to the board of trustees of the school district, as well as all fines imposed by the police judge of said city.

The bonds on which the judgment in this case was rendered were issued under this act, and it was so recited on their face. That this was a special act is not denied. Nor can it be controverted successfully that it confers corporate powers. The power to make a contract of this character, to collect the taxes necessary to pay the debt, to contract for and superintend and pay for the building, to receive the fund mentioned from the authorities of Falls City, are all in their nature corporate acts when performed by a body possessing corporate powers.

The statutes of Nebraska then in force declare that "every duly organized school district shall be a body corporate, and possess all the usual powers of a corporation for public purposes," . . . "and may sue and be sued, purchase, hold, and sell such personal and real estate as the law allows." The power conferred by the act of 1875 on School District No. 56 was conferred on a corporation, and was to be exercised by it as a corporation. It is, therefore, a corporate power, and was conferred, if at all, by a special act.

In response to this it is said that a school district is only a *quasi* corporation, and does not come within the constitutional provision. What is meant by the words "*quasi* corporation," as used in the authorities, is not always very clear. It is a phrase generally applied to a body which exercises certain functions of a corporate character, but which has not been created a corporation by any statute, general or special.

Such is not the case here, for the language of the Nebraska statute makes school districts corporations in the fullest sense of the word.

It is next argued that the constitutional provision was only

intended to apply to private corporations, as distinguished from those which are part of the body politic, such as counties and towns.

But we see no warrant for this distinction.

There is certainly nothing in the words of the provision to suggest any such distinction or limitation.   Nor do we see any reason why the local corporate bodies discharging public functions should not be governed by general and uniform laws as well as those for private enterprises. In fact, the weight of the argument seems to be the other way, for it can very well be seen that the aggregation of individual capital and energy into an associated organization may require different powers for each enterprise so established, while the powers to be exercised by cities, towns, townships, and school districts in the same State may or should be uniform in character all over the State. If any such rule is defensible at all, of which it is not our province to judge, its application to the latter class of corporations seems the more appropriate of the two.

The Constitution of the State of Ohio has a provision similar to that of the State of Nebraska relied on in this case.   In the case of *State* v. *Cincinnati* (20 Ohio St. 18), the Supreme Court of that State held that in the purview of the constitutional provision there was no distinction between private and municipal corporations.   To the same effect is the decision of the same court in *Atkinson* v. *M. & C. Railroad Co.*, 15 id. 21.   The Supreme Court of Nebraska, in *Clegg* v. *School District* (8 Neb. 178), held that the statute under which these bonds were issued was void, because forbidden by this clause of the State Constitution.

We are of opinion that this is a sound construction of the Constitution, and that, as to the first question certified to us, it must be answered that the act of Feb. 2, 1875, under which these bonds issued, is in conflict with the Constitution of the State, and is, therefore, void.

We are asked, however, to affirm the judgment because the bonds may be held valid under the powers conferred on school districts by the general statutes.

We are, however, of a different opinion.   The general statute had other conditions for creating a debt than the special act

mentioned on the face of these bonds. This statute provided a fund which might of itself be sufficient to pay the debt without resort to taxation. The vote of the electors might not have been obtained under the general statute. And as the bonds recite· that they were issued under this act, and that the vote was taken under it, we cannot see that power purposed to be exercised under other and very different circumstances can be invoked to give validity to an act which is void by the authority under which it professed to be acting.

These views render it unnecessary to answer the other questions certified to us. The judgment of the Circuit Court will be reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion.

*So ordered.*