JOHAN A. ANDERSON ET AL., APPELLANTS, V. FRANK LEHMKUHL, COUNTY CLERK, ET AL., APPELLEES. STATE, EX REL. FIRST FARMERS ELECTRIC DISTRICT, APPELLEE, V. FRANK LEHMKUHL, COUNTY CLERK, ET AL., APPELLANTS.

FILED MARCH 19, 1930. No. 26836.

*Peterson & Devoe, Charles H. Slama, Wymer Dressler, Joseph F. Berggren* and *C. F. Galloway,* for appellants ·Anderson and others.

*J. H. Barry* and *Rose, Wells, Martin & Lane, contra.*

Heard before GOSS, C. J., DEAN, THOMPSON, EBERLY and DAY, JJ., and PAINE, District Judge.

PAINE, District Judge.

Two suits were consolidated by the district court for Saunders county, and both were appealed to this court. In the first suit the district court denied an injunction against the defendants, which had been asked by the plaintiffs. The second suit comes here on appeal from an order of mandamus issued by the district court against the defendants. It is impossible to present the issues involved without giving a statement of the facts in the two cases and then a brief summary of the pleadings.

The First Farmers Electric District of Saunders county was organized under sections 7147-7154, Comp. St. 1922, for the purpose of building an electric line to distribute light and power to the farms within the electric district, and bonds of $30,000 were issued and sold to construct a transmission line of poles and wires within the district, which corporation proposed to buy electricity at wholesale from the municipal plant of the city of Wahoo at the rate of 6 cents per kilowatt, and in turn to sell this electric current to the users living in said district at retail at an increased price of from 9 cents to 14 cents per kilowatt. Said electric district consisted of about 21 sections of farm land running up to the city of Wahoo on all except the west side of said city, and in addition thereto the officers of the light district contracted to sell electric current to the village of Ithaca, which was two miles beyond the boundaries of said electric district, thereby contracting to furnish power and light to users who were residing outside of the electric district. Upon its construction said electric district began to do business and has since continued to function

in spite of continuous litigation, and is now furnishing light and power to its customers. The directors of said electric district assessed and levied taxes against the real and personal property within such district and certified the same to the county clerk of Saunders county, Nebraska, and such levy was spread upon the tax rolls by order of the commissioners of said county against all of the property located within such light district.

Said sections 7147-7154, Comp. St. 1922, as amended by chapter 169, Laws of 1923, were brought before this court in the case of *Elliott v. Wille*, 112 Neb. 78, and an opinion entered, finding the sections as amended were constitutional, and that such distribution of light, heat and power as was contemplated was for a public use as distinguished from a private use, which opinion was filed April 30, 1924, but upon rehearing an opinion was entered October 20, 1924, and reported in 112 Neb. 86, in which the judgment of affirmance was vacated and the judgment of the district court was reversed, for the reason that upon reargument this court decided that, when a legislative act authorized private individuals to create and fix the boundaries of a district for public improvement to be paid for by taxes levied upon the property within the district, and without any provision for determination whether the owner's property had been arbitrarily or unjustly included within the district, this was invalid in that it authorized the taking of private property for a public use without just compensation. The court decided that by such a law the legislature attempted to delegate to private individuals legislative and judicial functions, and that such act violated both the state and federal Constitutions, and this court issued an injunction as prayed for by the plaintiff.

Thereafter an attempt was made by those interested to validate the action originally taken by securing the passage by the legislature of Senate File No. 106, found in chapter 89, Laws 1925, which law, although couched in general terms, applied specifically to the local conditions of the First Farmers Electric District of Saunders county, as it

attempted to validate proceedings had prior to the passage of the law. Section 3, ch. 89, is as follows:

"The provisions of the two preceding sections shall be considered cumulative and supplementary to article VII, chapter 67, Compiled Statutes of Nebraska for 1922."

Under this law the officers of the First Farmers Electric District of Saunders county endeavored to make valid and legal all of the steps which had been taken under the sections which had been declared unconstitutional by this court in the case of *Elliott v. Wille*, 112 Neb. 86. A suit was immediately brought in the district court for Saunders county to enjoin the validation of the purported bonds and contracts of said electric district. This injunction was denied by the district court for Saunders county and appeal taken to this court. The issues were determined in the case of *Swanson v. Dolezal*, 114 Neb. 540, in which it was held that chapter 89, Laws 1925, attempted to cure the defect in the original provisions, and that the act was not a complete act within itself but was dependent upon the provisions of the former act which had been declared void. The effect of this decision was to wipe out all legislation in reference to this particular electric district, for it was enjoined from assessing or levying any taxes against the real or personal property within the boundaries of the district.

Those interested in establishing this First Farmers Electric District again sought relief from the legislature, and Senate File No. 68 was passed by the next legislature and became chapter 106, Laws 1927. This law to establish light and power districts in terms that would apply to the conditions in which the First Farmers Electric District found itself is carefully drawn and clearly shows the attempt of the one drafting the same to avoid the defects in the two former acts of the legislature as well as to come within the law as stated by this court in its two former decisions. The title of said Senate File No. 68 reads as follows:

"An act relating to and defining the powers of heat,

light and power districts where ineffective proceedings for their formation have heretofore been had; to validate and cure the ineffective proceedings heretofore had for their formation, their contracts and obligations, and their bonds heretofore issued and sold; and to declare an emergency."

The appellees urge vigorously that this act was complete in itself and not dependent in any way upon any prior act, admitting, however, that it assumed the existence of certain physical facts which did exist and gave a method by which the physical property of the former district, the name of which was not to be changed, might be acquired and the bonds issued several years before be ratified, confirmed and paid. Appellees base their procedure upon a statement, which was dictum, used by this court in *Swanson v. Dolezal, supra,* reading as follows: "We do not determine that a curative act may not afford relief desired in this case." With the emergency clause, this law, found in chapter 106, Laws 1927, was approved April 16, 1927, and the said electric district endeavored to proceed to validate the $30,000 worth of bonds and to assess and levy taxes to pay the interest thereon, and upon March 6, 1928, the plaintiffs filed their amended petition in the district court for Saunders county against Frank Lehmkuhl, as county clerk, and others, seeking a permanent injunction against the levy of such taxes on the ground that said act was invalid and unconstitutional. The defendants filed a demurrer to the amended petition, which was sustained by the district court, and the plaintiffs thereupon elected to stand on the amended petition, and the district court entered a decree sustaining the demurrer and dismissing the amended petition, and from that decree the plaintiffs prosecute this appeal to this court.

The second suit involved in this decision was filed on September 15, 1928, by the First Farmers Electric District bringing a mandamus suit against Frank Lehmkuhl, the county clerk, and other county officers to require and compel the taxing authorities to levy taxes against the real and

personal property within the electric district. In this suit Gust Swanson and 23 other taxpayers of said electric district filed their petition of intervention upon September 24, 1928, praying that mandamus be denied on the ground that chapter 106, Laws 1927, was unconstitutional, and upon this petition of intervention a trial was had upon October 8, 1928, and the district court entered a decree in favor of the First Farmers Electric District, and upon the motion for a new trial being overruled the defendants and interveners gave notice of this appeal.

Thus, while there are two distinct suits involving different plaintiffs and defendants, yet the injunction suit and the mandamus suit involve identical issues and both rest upon the primary question whether chapter 106, Laws 1927, is a valid act under the Constitution and Laws. For the purpose of determining this important question the two proceedings have been consolidated by agreement of the parties and all of the records and exceptions preserved in one bill of exceptions, and by agreement both of the cases are to be determined in one appeal by this court.

With this summary of the history of former proceedings we will now examine the pleadings filed. In the injunction case the amended petition filed by the plaintiffs alleges many of the facts hereinbefore set out and then charges that it is the purpose of the board of county commissioners and the county clerk and the county treasurer to levy and collect taxes upon the real and personal property in said district to operate said electric light and power district and to pay the principal and interest of the bonds heretofore issued by said district.

The plaintiffs further allege, first, that the said act of the 1927 legislature is unconstitutional and absolutely null and void, because it is special legislation, granting to this electric district exclusive privileges, immunities, and franchises; second, that it violates section 7, art. VIII of the Constitution of Nebraska, in that it uses the taxing power for a purely private or corporate purpose; third, that it violates the same section of the Constitution of Nebraska

because it attempts to make said electric district a municipal corporation and impose taxes for corporate purposes; fourth, that it violates section 3, art. I of the Constitution of Nebraska, and section 1 of the Fourteenth Amendment to the Constitution of the United States, in that it deprives the plaintiffs of equal protection of law and deprives them of their property without due process of law; fifth, that it is null and void for the reason that it makes no provision to give any taxpayer an opportunity to be heard except and unless the taxpayer owns real estate in said district, but that the owners of personal property who are taxpayers thereon have no voice whatever in said organization; sixth, that it is null and void because it grants special benefits to lands within the district, and that the legislature cannot impose taxation upon citizens generally for the purpose of paying for benefits to lands of certain individuals only which are especially benefitted thereby; and, lastly, that it is null and void for the reason that it provides for the original hearing to be had before the county commissioners irrespective of whether a majority or any of said commissioners may be residents and members of the light district and users of current therein and interested in the outcome of the proceedings, and fails to provide for a change of venue or a hearing before some other board in the event that any of the commissioners would be interested in or users of the electric current to be furnished by it, and alleges that one of the commissioners of Saunders county was so interested at the time the Senate File No. 68 was passed and ever since that time.

The amended petition further sets out that Senate File No. 68 was enacted in the hope of curing the defects of prior acts which had been held void by the supreme court in the two former cases herein cited, but alleges the fact to be that no district has ever been legally organized under any law whatsoever; that everything done thereunder is null and void for the reason that since the passage of Senate File No. 68 no petitions have been filed by any one for the organization of the district, no elections have been held,

no opportunity given to vote at any election or otherwise, and that Senate File No. 68 is an attempt to supplement former void statutes and to validate contracts and other obligations which were null and void at the time they were performed and executed, and that the distribution of the electric current by said district is not of a public nature nor business in which the public is interested in any manner in a municipal or governmental capacity. To this amended petition appellees filed a general demurrer.

The second case before us is a mandamus case brought by the state of Nebraska, on the relation of the First Farmers Electric District, against the county officers, praying that they be required to extend the levy as taxes in the sum of $4,000 certified, and proceed to collect the same as taxes against the taxable property in the district. To this petition some 24 taxpayers filed a petition in intervention praying that chapter 106, Laws 1927, be declared unconstitutional, null and void, and that the officers be perpetually enjoined from collecting such taxes. The county attorney filed an answer also praying the court to declare said law unconstitutional. These cases were taken under advisement by the district court and a memorandum opinion filed, from which this appeal is taken.

1. This court appreciates the importance of the issues involved and is mindful of the fact that two opinions affecting the same subject-matter are now in the published reports of this court.

Much stress is laid by the appellees upon expressions found in the first opinion published in the case of *Elliott v. Wille,* 112 Neb. 78. It is claimed by appellees that it is conclusively settled by this opinion that distributing this electricity is a public purpose, and appellees rest other contentions upon this decision. But in the later opinion in the same case, as set out in 112 Neb. 86, such opinion of affirmance was vacated and set aside and the judgment of the district court was reversed.

A judgment of this court, entered after a rehearing, seasonably requested and allowed, becomes a final judgment

and entirely supersedes the former judgment, which is thereby suspended and vacated and is of no force or effect.

2. The many issues presented in the pleadings tempt one to weigh the authorities in support or opposition to each contested claim, but because of the fairly extended statement of the facts and issues involved, while we have given attention to each and every issue presented and every challenge interposed, yet our consideration of only the most material thereof will be set out in this opinion in order not to unduly extend the same.

The court finds that under an act set out in sections 7147-7154, Comp. St. 1922, as amended by chapter 169, Laws 1923, the First Farmers Electric District was organized, its lines built, and bonds of $30,000 issued, and this court in *Elliott v. Wille*, 112 Neb. 86, held that such statutes violated both the state and federal Constitutions because such act permitted the taking of private property for a public purpose without due process of law.

The first curative act endeavoring to validate the outstanding obligations of said district was obtained from the 1925 legislature, and is found in chapter 89, Laws 1925, and upon proper proceedings being taken in the district court for Saunders county this act was brought before this court and an opinion rendered in the case of *Swanson v. Dolezal*, 114 Neb. 540, wherein this court held the first curative act to be expressly supplementary to the original unconstitutional legislation and therefore to be absolutely void; citing decisions from the United States supreme court and from Nebraska as follows:

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County*, 118 U. S. 425.

"The general rule is that an unconstitutional statute is invalid from its inception, and as ineffectual as though it had never passed." *State v. Several Parcels of Land*, 78 Neb. 703.

In *City of Plattsmouth v. Murphy,* 74 Neb. 749, this court held: "An act of the legislature amendatory of, or supplemental to, an unconstitutional law is unconstitutional and void."

Now there is presented to this court the second curative act, secured from the legislature in a new attempt to validate the obligations of this district, and such act is found in Senate File No. 68, set out in chapter 106, Laws 1927. Let us consider first a provision found in section 1 of this Senate File No. 68, reading as follows:

"The county board shall give to such district the name theretofore adopted and used for the same: Provided nothing in this act shall be construed as authorizing the organization of new districts."

This discloses an effort by special legislation to confirm and ratify acts done years ago under an act declared to be void, and precludes the organization of any other district under this act. This act provides in section 2:

"The bonds of said district heretofore issued and sold for the purpose of constructing a system for the distribution of light, heat and power, and all of its proceedings therefor, and all of the contracts and obligations of said district, with boundaries so fixed and determined by the county board as in section 1 of this act provided, are hereby confirmed and validated, and any defects and irregularities therein, or in the proceedings therefor, are hereby cured, so that said bonds, contracts and obligations shall and they are hereby made and declared to be the valid obligations and rights and properties of said district."

It appears that this is a special and purely local act, applying only to this particular district, and for that reason, if for no other, is in violation of constitutional restrictions. *State v. Scott,* 70 Neb. 685; *State v. Kelso,* 92 Neb. 628.

A curative act is one intended to give legal effect to some past act or transaction which is ineffective because of neglect to comply with some requirement of law. 12 C. J. 1091; *Schamblin v. Means,* 6 Cal. App. 261.

It is generally conceded that the legislature may by a retroactive statute validate acts which are void by reason of informality or because of failure to comply with some technicality. 12 . C. J. 1093; *McSurely v. McGrew*, 140 Ia. 163.

3, 4. The appellees, insisting that the present act is a legal curative statute, cite *Gibson v. Sherman County*, 97 Neb. 79, and other cases, but the cases cited do not apply to the facts in this case. Defects in legal proceedings which are mere irregularities may in the absence of constitutional limitations be corrected. Retroactive statutes may legalize unauthorized acts which could have been authorized in the first place, but the legislature has no power to legalize defective proceedings based on a former act which has been held to be unconstitutional. 6 R. C. L. 320.

5. Appellees insist that there is a moral obligation to repay the money borrowed upon the bonds, and that this court should not repudiate these bonds on purely technical grounds but should seek diligently to find a legal ground upon which to validate the bonds. Appellees in support thereof cite the case of *Dawson County v. McNamar*, 10 Neb. 276, but the facts in that case are so entirely different from the case at bar that it cannot be considered a precedent. The courts appear to be divided upon the question as to the extent to which moral obligations may be recognized when arising out of unconstitutional laws. 6 R. C. L. 119. A few courts hold that moral obligations in themselves are sufficient to sustain payment from the public treasury. *United States v. Realty Co.*, 163 U. S. 427. Many other courts take the opposite view. The general rule is that an unconstitutional statute, though having the form and name of law, is in reality no law, but is wholly void, and in legal contemplation is as inoperative as if it had never been passed. Since an unconstitutional law is void, it imposes no duties and confers no power or authority on anyone. It affords protection to no one, and no one is bound to obey it, and no courts are bound to enforce it. A bond or contract which rests on an unconstitutional statute is

void and creates no obligation to be enforced by subsequent legislation.

Senate File No. 68 is primarily for the purpose of passing a curative act which will validate $30,000 worth of bonds which have been issued years ago under laws that have been declared to be void and unconstitutional, and a careful study of it impresses the court with the fact that the present legislation is open to many of the same objections as the former legislation, admitting for the purpose of argument that it has been much more carefully drawn and is a studied attempt to avoid the pitfalls of former legislative acts, while at the same time attempting to validate bonds founded upon legislative acts heretofore declared unconstitutional.

It is the duty of courts to exercise extreme caution in deciding constitutional questions and to avoid passing upon them adversely if possible. But when similar facts are presented to this court for the fourth time, twice in the case of *Elliott v. Wille, supra*, and also in the case of *Swanson v. Dolezal, supra*, and now again in this case, and after several sessions of our legislature have been induced to take action in the matter, it must be definitely, and we trust finally, passed upon by this court.

The court is never limited to the exact letter of the law but should ascertain the purpose and effect of the legislation. Under our laws ample provisions exist for municipal ownership lighting plants, and their growth has met the need in many communities in a very satisfactory manner, while in other places municipal plants have been discontinued. However, in this particular case we believe from the act itself it clearly appears that this enactment is only for this especial location and to inject life into bonds issued heretofore under proceedings declared void.

Appellees cite the case of *Cunningham v. Douglas County*, 104 Neb. 405, where, after the Douglas county courthouse was burned by a mob, a special session of the legislature gave relief by allowing several times the usual taxes to be levied to pay bonds by the device of changing the valuation

of property to its full "market value" in place of "assessed value."

There is an old adage, "Hard cases are the quicksands of the law;" and, also, "Hard cases make poor law." In our judgment this act is a special law and violates section 18, art. III of the Constitution, providing that, "In all other cases where a general law can be made applicable, no special law shall be enacted."

In our opinion the general incorporation laws will permit the organization of a company that will give the relief desired and carry out all obligations of the district, legal as well as moral.

Many electrical transmission and distribution lines have been incorporated under our general incorporation law in Nebraska to carry on similar business, by building lines, issuing bonds and retiring them from their earnings instead of from general taxation, and they do all these things without any attempt to secure any special legislation with power of unlimited taxation.

The court finds that the decision and orders entered by the court below were erroneous, and directs that the mandamus proceedings be dismissed; that a judgment be entered in the injunction case in favor of the appellants as prayed.

REVERSED.