CLARENCE WITTLER, APPELLEE, V. CARL W. BAUMGARTNER ET AL., APPELLANTS, IMPLEADED WITH LOUP RIVER PUBLIC POWER DISTRICT, A CORPORATION, ET AL., APPELLEES, BURT COUNTY PUBLIC POWER DISTRICT ET AL., INTERVENERS-APPELLANTS, WILLIAM H. FITZPATRICK ET AL., INTERVENERS-APPELLEES.

144 N. W. 2d 62

Filed June 24, 1966. No. 36269.

Clarence A. H. Meyer, Attorney General, and Richard D. Wilson, for appellants.

Kenneth M. Olds and Clarence A. Davis, for interveners-appellants.

Lester A. Danielson, for appellee Wittler.

Bert L. Overcash, Allen L. Overcash, Woods, Aitken & Aitken, and Lyle Winkle, for appellee Loup River Public Power Dist.

Mathews, Kelley & Cannon and Wood, King, Dawson & Logan, for appellees The Omaha Nat. Bank et al.

Schmid, Ford, Snow, Green & Mooney, for interveners-appellees.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and SCHEELE, District Judge.

CARTER, J.

This is an action by the plaintiff, Clarence Wittler, as an elector residing in Platte County and an owner of bonds issued by Loup River Public Power District, asserting the unconstitutionality of Legislative Bill 764, Laws 1965, chapter 404, page 1292, enacted by the Legislature at its Seventy-Fifth Session, which we shall hereafter refer to as the "Act."

The parties defendant are the 11 appointed and acting directors of the public corporation created by the Act; the Loup River Public Power District, a public corporation engaged in the generation, transmission, and distribution of electrical energy, hereafter referred to as Loup; and The Omaha National Bank of Omaha and the American National Bank and Trust Company of Chicago, trustee and co-trustee of Loup's bonds under an agreement and trust indenture dated May 1, 1949, hereafter referred to as the "trustees."

A petition in intervention, in the form of a class action was filed by William H. Fitzpatrick, a resident of Sarpy County, and Edward H. Elstun, a resident of Douglas County, adopting the second amended petition of the plaintiff. A petition in intervention was also filed by 22 rural public power districts and an electric membership association who assert the validity of the Act.

All parties to the action filed pleadings making up the issues, including the questioned constitutionality of the Act. The directors of the public corporation created by the Act, whom we will subsequently refer to as the grid system directors, thereupon filed a motion for judgment on the pleadings. Interveners Elstun and Fitzpatrick also moved the court for a judgment on the pleadings on the ground that the Act was unconstitutional. The trial court, after hearing, sustained the motion of interveners Elstun and Fitzpatrick for a judgment on the pleadings, held the Act to be unconstitutional, and enjoined the grid system directors from effectuating the purposes of the Act. All other motions for judgment on the pleadings were denied. The directors of the grid system, and 23 interveners have appealed.

It is contended that the motion for judgment on the pleadings is insufficient in the instant case to sustain a holding of unconstitutionality of the Act. A motion for judgment on the pleadings, like a demurrer, admits the truth of all well-pleaded facts in the pleadings of the opposing party, together with all reasonable inferences to be drawn therefrom. The party moving for judgment on the pleadings necessarily admits, for the purpose of the motion, the untruth of his own allegations insofar as they have been controverted. Board of Trustees of York College v. Cheney, 160 Neb. 631, 71 N. W. 2d 195. A motion for judgment on the pleadings does not waive a trial on disputed issues of fact. Under the foregoing rules and the pleadings, the unconstitutionality of the Act could properly be determined on a motion for judgment on the pleadings.

The public power issue in Nebraska has resulted in many problems. After the enactment of Laws 1933, chapter 86, page 337, the Platte Valley Public Power and Irrigation District and the Loup River Public Power District were organized. In 1939 Consumers Public Power District was organized under existing statutory authority to supply a market for power developed by the

first two public corporations. Existing statutes permitted each of these three public corporations to render service outside their district boundaries, with the result they became so competitive as to seriously impair the best interests of the public. All attempts to solve the problem failed and the Legislature in 1965 passed the Act with which we are here concerned, in an attempt to solve the problems of the public power industry in Nebraska.

The Act provided substantially for the creation of a public corporation and political subdivision described in the Act as the grid system. All public power districts serving more than 15 counties within the state on July 1, 1966, were required to be members of the grid system. Two counties, Douglas and Sarpy, were not included in the election districts created by the Act. The powers of the district were to be those prescribed in Chapter 70, article 6, R. R. S. 1943, and amendments thereto. The 91 counties of the 93 in the state, excluding Douglas and Sarpy, were divided into 9 districts from each of which a director was first to be appointed during fixed staggered terms, after which they were to be elected from their respective districts. The boards of directors of member power districts were to be superseded by the grid system board. The grid system board was to carry out all obligations of members without any impairment thereof. By the unification of control of the public power districts required to become members of the grid system, it appears to have been the purpose of the Legislature to eliminate harmful competition, avoid duplication of lines and service, and reduce the cost of electrical energy to the public. Other pertinent details of the Act will be discussed in connection with the questions of constitutionality raised.

It is the contention of the plaintiff that the Act is unconstitutional for the following reasons: (1) Because it creates a corporation by special law; (2) because it grants to a corporation, if lawfully created, special and

exclusive privileges; (3) because it grants to individuals special and exclusive privileges; (4) because it is special and class legislation which freezes the class; (5) because the Legislature unlawfully encroached on the powers of the executive department; and (6) because it impairs the obligations of Loup's contract with its bondholders.

The public corporations required by the Act to become members of the grid system are subject to the plenary control of the Legislature. In the exercise of such power the Legislature may authorize, limit, control, or even destroy such public corporations. City of Auburn v. Eastern Nebraska Public Power Dist., 179 Neb. 439, 138 N. W. 2d 629; City of O'Neill v. Consumers Public Power Dist., 179 Neb. 773, 140 N. W. 2d 644. The grid system is to perform proprietary functions as distinguished from those that are governmental. The Act was passed for the purpose of carrying out the public policy of the state as it relates to public power. It deals with a matter of statewide concern. It is fundamental that the Legislature has the right to classify public power districts for the purposes of legislation if a reasonable basis for the classification exists. It may not classify public power districts on an arbitrary and unreasonable basis. We cannot say that legislation dealing with all public power districts in the state which operate in more than 15 counties is unreasonable where it operates upon all alike that are within the class.

It is provided in part by Article XII. section 1, Constitution of Nebraska, as follows: "The Legislature shall provide by general law for the organization, regulation, supervision and general control of all corporations, * * *. No corporations shall be created by special law, nor their charters be extended, changed or amended, except those corporations organized for charitable, educational, penal or reformatory purposes, which are to be and remain under the patronage and control of the state. All general laws passed pursuant to this section

may be altered from time to time, or repealed." The Act is not within the exception contained in the foregoing section.

The defendant grid directors cite authorities from other states which hold that similar constitutional provisions apply only to private corporations. But whatever the law may be in those states, this court has held that Article XII, section 1, Constitution of Nebraska, applies to both private and public corporations. If this was not the meaning of the provision, it would have been a simple matter to have placed an indication of such intent in the provision. This the people in adopting the provision did not do, and it is not the province of this court to add language to its plain terms to restrict or extend its meaning.

In Clegg v. School Dist. No. 56, 8 Neb. 178, an act of the Legislature, authorizing school district No. 56 to issue bonds for the erection of a school building, was held void as special legislation. In the course of that opinion this court said: "It cannot be doubted that the act in question is a special act. It relates exclusively to school district No. 56, in Richardson county. None of its provisions apply, or are intended to apply to any other district or subdivision of the state, or the people thereof. It was published only as a special law.

"It is equally clear that the powers intended to be conferred by said act—that of issuing bonds, to be binding upon, and the principal and interest thereof to be paid by the said district—are corporate powers within the meaning of the said section of the constitution.

"It was evidently the intention of the framers of the constitution to put an end to an universally admitted and then growing evil, that of local and special legislation, in all cases where the beneficial results of such legislation could be reached by general laws, and they thereby adopted a policy which it is the duty of this court to uphold." See, also, Hallo v. Helmer, 12 Neb. 87, 10 N. W. 568; Dundy v. Board of County Commissioners of

Richardson County, 8 Neb. 508, 1 N. W. 565.

In School District No. 56 v. St. Joseph Fire & Marine Ins. Co., 103 U. S. 707, 26 L. Ed. 601, a case arising under Nebraska law, the court said: "It is next argued that the constitutional provision was only intended to apply to private corporations, as distinguished from those which are part of the body politic, such as counties and towns. But we see no warrant for this distinction.

"There is certainly nothing in the words of the provision to suggest any such distinction or limitation. Nor do we see any reason why the local corporate bodies discharging public functions should not be governed by general and uniform laws as well as those for private enterprises. In fact, the weight of the argument seems to be the other way, for it can very well be seen that the aggregation of individual capital and energy into an associated organization may require different powers for each enterprise so established, while the powers to be exercised by cities, towns, townships and school districts in the same State may or should be uniform in character all over the State. If any such rule is defensible at all, of which it is not our province to judge, its application to the latter class of corporations seems the more appropriate of the two."

Section 2 of the Act before us provides: "There is hereby established for the purpose of carrying out the policy of the state, a public corporation and political subdivision thereof which shall be officially named by resolution of its board of directors and which is referred to in this act as the grid system. The name chosen by the board of directors shall not be the same as the name of any district controlled by the grid system." This section creates a single public corporation. It delegates the naming of the corporation to the board of directors which clearly indicates an intention to establish a single public corporation by a legislative act which relates solely to the corporation it purports to create.

It is evident from the Act itself that the Legislature

was attempting to create a single public corporation by a special act rather than by general law. The Act applies only to the public corporation which is designated as the grid system. It can apply to no other. This it may not do. State ex rel. Wheeler v. Stuht, 52 Neb. 209, 71 N. W. 941. In Board of Directors of Alfalfa Irr. Dist. v. Collins, 46 Neb. 411, 64 N. W. 1086, we approved the following, involving a similar constitutional provision, from In re Bonds of Madera Irr. Dist., 92 Cal. 296, 28 P. 272, 27 Am. S. R. 106, 14 L. R. A. 755: "It is contended that the act is unconstitutional for the reason that it is a delegation of the legislative power to create a corporation. If by this is meant that only the legislature can create such corporation, the answer is that the constitution prohibits such action. If it is meant that because the corporation is not 'created' until the voters of the district have accepted the terms of the act, the answer is, that such proceeding is in direct accord with the principles of the constitution. Having the power to create municipal corporations, but being prohibited from creating them by special law, the only mode in which such corporations could be created under a general law would be by some act on the part of the district or community seeking incorporation, indicative of its determination to accept its terms." In Lincoln Street Ry. Co. v. City of Lincoln, 61 Neb. 109, 84 N. W. 802, this court said: "Under the constitution and laws of this state, special charters to corporations, with the exceptions mentioned, are prohibited." See, also, Anderson v. Lehmkuhl, 119 Neb. 451, 229 N. W. 773; State ex rel. Patterson v. County Commissioners of Douglas County, 47 Neb. 428, 66 N. W. 434; State Water Conservation Board v. Enking, 56 Idaho 722, 58 P. 2d 779. It is quite apparent that by virtue of Article XII, section 1, Constitution of Nebraska, the Legislature may prescribe the method and manner of establishing public corporations by general law, but it may not create a public corporation by special law. The Act purports to create a public corporation by a special

law and contravenes Article XII, section 1, of the Nebraska Constitution.

It is contended by the interveners Fitzpatrick and Elstun that the Act is unconstitutional in that it disfranchises the electors of Douglas and Sarpy counties in violation of Article I, sections 1 and 22, Constitution of Nebraska, and for the further reason that it discriminates between persons, and grants special or exclusive privileges, immunities, and franchises in violation of Article I, section 16, and Article III, section 18, Constitution of Nebraska. In this connection the Act recites that all facilities for the generation, transmission, and distribution of electric energy in this state are owned by the people. It further recites that the long-range welfare of electric users in the state requires that all public power districts operating in more than 15 counties should be unified under a single management. Districts are created from which directors are to be first appointed and then elected. In establishing the 9 districts, all counties of the state are included except Douglas and Sarpy counties. The two excluded counties contain approximately 30 percent of the population of the state. The Act purports to operate statewide, but excludes the electors of Douglas and Sarpy counties from voting for grid system directors or holding office as a grid system director. The Loup and Platte districts have electric facilities in each of the 2 excluded counties. The Omaha Public Power District (OPPD) operates in more than 15 counties, including Douglas and Sarpy, and is a potential member of the grid system which will become effective under the Act on July 1, 1966. It is contended that the electors of Douglas and Sarpy counties are discriminated against by their disfranchisement. It is asserted that the Act grants special privileges to the electors of 91 counties which it denies to the electors of the 2 excluded counties. The record shows that Loup and Platte extend their operations into Douglas and Sarpy counties but the electors of those counties are denied

the right to vote for directors of the grid system, while some counties whose electors are permitted to vote are not served at all by a public corporation operating in more than 15 counties.

The Act establishes a new public corporation and political subdivision. It invests the grid system with the powers of a public power district organized under the provisions of Chapter 70, article 6, R. R. S. 1943. It is a governmental subdivision invested with the powers of a private corporation. When a governmental subdivision is engaged in an enterprise, commercial in nature, it does not lose its character as a public corporation. Platte Valley Public Power & Irr. Dist. v. County of Lincoln, 144 Neb. 584, 14 N. W. 2d 202, 155 A. L. R. 412; United Community Services v. The Omaha Nat. Bank, 162 Neb. 786, 77 N. W. 2d 576.

The Legislature may, of course, provide for the selection of directors of a public power district by appointment of the Governor, or by election. It is fundamental that, when they are to be elected by the people, the classification of electors must be a reasonable one. We agree with the grid system directors that constitutional provisions, Article I, section 22, and Article VI, sections 1 and 2, are not applicable to public corporations exercising only proprietary functions. This has been determined by this court many times. See, State ex rel. Harris v. Hanson, on rehearing, 80 Neb. 738, 117 N. W. 412; Cunningham v. Ilg, 118 Neb. 682, 226 N. W. 333: City of Curtis v. Maywood Light Co., 137 Neb. 119, 288 N. W. 503. But this does not free the Legislature from compliance with other sections of the Constitution.

It is also fundamental that, although it is competent for the Legislature to classify for purposes of legislation, the classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstance, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. Safeway Stores, Inc.

v. Nebraska Liquor Control Comm., 179 Neb. 817, 140 N. W. 2d 668. In State ex rel. Taylor v. Hall, 129 Neb. 669, 262 N. W. 835, we said: "The legislature may legislate in regard to a class of persons, but they cannot take what may be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fractions of the original unit as two classes, and enact different rules for the government of each." The same principle was involved in State ex rel. Wright v. Brown, 131 Neb. 239, 267 N. W. 466, where we said: "It is unthinkable that under our constitutional provisions the election of a judge for Lancaster county (justice of the peace district No. 10) should be limited to the electors of the city of Lincoln, to the exclusion of the electors of the balance of the territory within the jurisdiction. If the legislature can enact a valid law to accomplish this purpose, it may change the justice of the peace districts and substitute the municipal court of Lincoln over a larger territory, including many counties in the state. This is not to say that judges must be elected. But if elected, they must be elected by all the electors of their district. The plan of electing officers by a part of the electors of the district has certainly been condemned."

The grid system applies to all public power districts in the state which operate in more than 15 counties. The Act indicates no basis for classifying the electors of 91 counties for the purpose of electing grid system directors and excluding the electors of 2 counties similarly situated. Nor are we able to find any reason why the directors of a public corporation operating statewide must come from 91 counties to the exclusion of the other 2. We conclude that the Act is violative of Article I, section 16, and Article III, section 18, Constitution of Nebraska.

It is contended that the Act is in violation of the Constitution in that the Act constitutes an encroachment by the Legislature upon the exclusive prerogatives of the Governor in violation of the distribution of powers sec-

tion of the Constitution. Art. II, sec. 1, Constitution of
Nebraska. This contention is based on the limitations
imposed on the Governor in the appointment of directors
to the grid system board of directors on the establish-
ment of the grid system. The pertinent part of section 6
of the Act provides: "In the first instance the directors
of the grid system shall be appointed by the Governor
from among the directors of member districts whose
management it assumes under the provisions of this act;
Provided, that there is an eligible board member in a
district, and if there is no eligible board member then
the Governor shall appoint an elector of the district.
* * * The terms of the members appointed from Districts
1, 4, and 7 shall expire on January 1, 1969; the terms
of the members appointed from Districts 2, 5, and 8
shall expire on January 1, 1971, and the terms of the
members appointed from Districts 3, 6, and 9 shall ex-
pire on January 1, 1973. * * * After appointment of the
original board of directors from the districts, their suc-
cessors shall be nominated and elected as nearly as may
be as by law provided for the nomination and election of
members of the Legislature and shall take office for
six-year terms."

Under the Constitution of Nebraska the supreme ex-
ecutive power is vested in the Governor. Art. IV, sec. 6,
Constitution of Nebraska. The Constitution further pro-
vides that the Governor, with the advice and consent
of the Legislature shall appoint all officers whose offices
are established by the Constitution, or which may be
created by law, and that no such officer shall be ap-
pointed or elected by the Legislature. Art. IV, sec. 10,
Constitution of Nebraska. It is contended that the fore-
going sections of the Constitution are violated in that
the Legislature encroached upon the powers of the Gov-
ernor by unduly restricting the field from which the
directors of the grid system could be appointed. The
grid system directors in their answer admit that Carl
W. Baumgartner is the only person who could be ap-

pointed in District 1. It is admitted also that Bernard M. DeLay, Harold F. Boehner, Guy L. Cooper, and Frederick H. Wagener are the only persons whom the Governor could appoint as grid system directors under the provisions of the Act in Districts 4, 7, 8, and 9, respectively.

In State ex rel. Beck v. Young, 154 Neb. 588, 48 N. W. 2d 677, this court said: "The power of the Legislature in the creation of an office, admittedly a legislative function, is limited to those matters which are defined as ingredients of the office. * * * It is within the power of the Legislature to create an office, define its powers, limit its duration, and provide for the compensation of the occupant. The power of appointment and removal is in the Governor except as limited by Article IV, section 12, of the Constitution, and the legislative or judicial branches may not properly trench upon the executive power thus granted."

The appointive power here involved is executive or administrative in character. The power of the Legislature to consent or confirm executive appointments is also executive or administrative rather than a legislative function. But the Constitution itself transgresses the division of powers provision contained in it and, so far as it does, the separate departments have the power constitutionally granted. State ex rel. Johnson v. Hagemeister, 161 Neb. 475, 73 N. W. 2d 625; State ex rel. Horne v. Holcomb, 46 Neb. 88, 64 N. W. 437.

In State ex rel. Hensley v. Plasters, 74 Neb. 652, 105 N. W. 1092, 3 L. R. A. N. S. 887, we said: "Again, there can be no doubt that the legislature, after it has established an office, or in the act of establishing it, may provide for filling the office either by election by the people or, in a proper case, by appointment by some designated authority. The legislature, however, cannot itself fill the office. It cannot elect or appoint the officer. Const. art. V, sec. 10; State v. Stanley, 66 N. Car. 59, 8 Am. Rep. 488; State v. Holcomb, 46 Neb. 88. And it

seems to us to follow that it cannot by direct legislation for that sole purpose cause an office to be held for the term, or any period of the term, by any particular individual. * * * So that attempted legislation, which has for its sole purpose to determine who shall be the incumbent of the office for another definite period of time, is infringing upon the rights of the people, and is void."

We conclude that the power of appointment of grid system directors was the prerogative of the Governor. The right of the Legislature to prescribe reasonable qualifications of one to be appointed to office is not disputed. But the Legislature is prohibited by constitutional provision from appointing officers whose offices are created by law, either directly or indirectly. The provisions of the Act which limit the appointment of grid system directors by the Governor to a certain unnamed individual or to a limited few, is an encroachment by the Legislature upon the powers of the Governor and is void as violative of Article IV, section 10, of the Constitution of Nebraska.

It is argued by the directors of the grid system that OPPD advised the Legislature it intended to reduce the number of counties in which they would operate to 15 or less before July 1, 1966. It is contended that this in some way justified the exclusion of Douglas and Sarpy counties from the designated districts and removes questions of reasonable classification of electors and the discriminations against the electors of these two counties. We find nothing to support such a contention. Section 9 of the Act permits potential districts to reduce the number of counties in which they operate to 15 or less before July 1, 1966, and thereby exclude themselves from the grid system. By compliance with this section, OPPD could exclude itself from the grid system without regard to the inclusion or exclusion of Douglas and Sarpy counties, and without improperly classifying electors or discriminating against the electors of those two counties. It is asserted that although

the grid system involves a matter of statewide concern, it does not mean that it necessarily must operate statewide. This is, of course, true. Omaha Parking Authority v. City of Omaha, 163 Neb. 97, 77 N. W. 2d 862. But we again point out that the grid system is to include all public power districts in the state which operate in more than 15 counties. No counties were excluded in terms. Certainly OPPD is included if it operates in more than 15 counties including Douglas and Sarpy counties. The grid system was clearly to include all public power districts in the state operating in more than 15 counties on July 1, 1966. It is necessarily a statewide public power district as created. The construction contended for by the grid system directors cannot be read into the Act. There are statements in the briefs that the Legislature intended to exclude OPPD. But this cannot be found by any language in the Act. We must construe the Act as it was written and enacted, not from extraneous evidence of purpose or intent. In State ex rel. Graham v. Bratton, 90 Neb. 382, 133 N. W. 429, we said: "While the equities of the case seem to be with the relator, it is not within our power to set aside or amend by construction an act of the legislature which is free from all ambiguity and clear and explicit in its terms, simply because to do so would appear to be equitable; nor can we do so upon the theory that, in our judgment, the legislature made a mistake and did not intend to do that which its language clearly imports. To adopt such a course would be establishing a dangerous precedent. If the legislature has blundered, it is simply proof of its fallibility, and it is for it to make the correction." The Act provides that the electors of 91 counties have the right of franchise no matter what happens in the future and without regard to the source of their electric service. On the other hand, the voters of Douglas and Sarpy counties are barred from their right to vote regardless of future events or the source of their electric service. The discrimination is

not based on any reasonable classification of voters, and certainly the fact that OPPD may or may not become a member of the grid system on July 1, 1966, will not affect or support a basis for reasonable classification.

The trustees and Loup, as well as the plaintiff, argue that the Act impairs the obligations of the bonds that have been issued by Loup and the indenture under which bondholders purchased Loup's bonds. The question of impairment of the bonds is argued pro and con by most of the parties to the action. Our holding that the Act is unconstitutional makes it unnecessary for us to discuss this question. A discussion of all the questions alleged relating to contract impairment would unduly extend this opinion without serving any useful purpose. Other questions presented are in a similar situation.

We conclude that L.B. 764, Laws 1965, chapter 404, page 1292, is violative of the Constitution in that it creates a public corporation by special law; because it grants special privileges to persons in the same class which it denies to others of the class; and because the Legislature in enacting the Act unlawfully encroached upon the powers of the Governor. We therefore hold L.B. 764, Laws 1965, chapter 404, page 1292, to be void and of no force and effect. The trial court having come to this same conclusion, its judgment is affirmed.

AFFIRMED.

BOSLAUGH and SMITH, JJ., dissenting in part.

We respectfully dissent from the part of the majority opinion which holds that the grid system law contravenes Article XII, section 1, Constitution of Nebraska, our concurrence in the other parts being noted. The majority opinion announces that a law creating a single public corporation is necessarily special within the constitutional prohibition, and it strips the Legislature of power to cast a state instrumentality in the form of a public corporation, though the corporation be under a duty to serve equally every person and every locality.

The conclusion in the majority opinion is extreme.

It is not thrust upon us by our decisions involving local corporations. It breaks with our settled definition of general and special laws. It is a far cry from the purpose of the constitutional provision, from the elimination of logrolling, and other well-known evils of special legislation. See, State ex rel. Kauer v. Defenbacher, 153 Ohio St. 268, 91 N. E. 2d 512; Ennis v. State Highway Commission, 231 Ind. 311, 108 N. E. 2d 687; Indiana State Toll Bridge Commission v. Minor, 236 Ind. 193, 139 N. E. 2d 445; Orbison v. Welsh, 242 Ind. 385, 179 N. E. 2d 727; State ex rel. Carter v. Harris, 273 Ala. 374, 377, 141 So. 2d 175, 177. We regret the mistake—the majority opinion placing form ahead of substance. See, State ex rel. Johnson v. Consumers Public Power Dist., 143 Neb. 753, 10 N. W. 2d 784, 152 A. L. R. 480; State ex rel. Wheeler v. Stuht, 52 Neb. 209, 71 N. W. 941.