REQUESTED BY: Dear Senator Wesely:
We are responding to your letter of August 1, 1979, requesting an opinion as to the constitutionality of LB 171, known as the Nebraska Lighting and Thermal Efficiency Act, which seeks to create a Nebraska Energy Office.
The specific concerns you address are: (1) the selection of the membership of the state board from a list provided by private organizations or associations; (2) whether the rule-making authority contained in the language of the proposed act is an unconstitutional delegation of authority by the Legislature?
 I.
As proposed, LB 171 provides for the creation of the Lighting and Thermal Efficiency Standards Board consisting of seven members. Section 5 of the proposed act provides for the appointment of such members by the Governor subject to approval by the Legislature. Each of the seven members would be chosen from a list of three persons submitted by a specific private trade organization representing different businesses or professions. No business or profession would be permitted representation by more than one member on the board.
The Nebraska Constitution at Article IV, section 10
grants the Governor of the State the power to make appointments to state offices, and reads in pertinent part as follows:
 "The Governor shall appoint with the approval of a majority of the Legislature, all persons whose offices are established by the Constitution, or which may be created by law, and whose appointment or election is not otherwise by law or herein provided for; and no such person shall be appointed or elected by the Legislature. . . ."
The Supreme Court applied this constitutional section to an act creating a public electric corporation whose membership was composed of public power districts within the state, in Wittler v. Baumgartner, 180 Neb. 446,144 N.W.2d 62 (1966). By this act, the Legislature created a board of directors providing a system for their appointment by the Governor. The state was apportioned into regions, each region being represented by a person serving on one of the constituent public power district board of directors. It was undisputed that of the nine regions from which members were selected for the board of directors, five of the regions contained only one person qualified to receive appointment to the board of directors. The court recognizes that it was a legislative function to define the qualifications for an office. It concluded, however, that this system limiting the Governor's power of appointment violated Article IV, section10, of the Nebraska Constitution. The court said:
 ". . . The provisions of the Act which limit the appointment of grid system directors by the Governor to a certain unnamed individual or to a limited few, is an encroachment by the Legislature upon the powers of the Governor and is void as violative of Article IV, section 10, of the Constitution of Nebraska." (Emphasis added.) Id. at 460.
It is evident that LB 171 as proposed encroaches upon the Governor's prerogatives of appointment by its limitation of eligibility for an appointment as a member of the board of directors each selected from a list provided by one of six private trade organizations, which trade organizations are designated by the Legislature. This is not only an encroachment by the Legislature by its designation of these organizations, and by its designation of a list of three persons, it is also a delegation of executive authority reserved for the Governor in Article IV, section 10, of the Constitution to private trade organizations in the limitation of the eligibility to a person selected from that organization.
It is our conclusion that the limitation of the Governor's selection to a list of three persons previously selected by private organizations named by the Legislature is an encroachment by the Legislature upon the prerogatives of the Governor and is, therefore, in violation of Article IV, section 10, of the Nebraska Constitution.
 II.
The proposed act at section 10 requires the board to adopt standards by the following pertinent language:
 "The board shall adopt standards imposing reasonable and cost effective requirements for lighting and thermal design consistent with recognized and accepted standards. . . ."
It provides the following guidance in the same section:
 ". . . In adopting such standards the board may
include all or any part of the standards published by the International Conference of Building Officials, the National Bureau of Standards, the United States Department of Energy, the Council of American Building Officials, the American Society of Heating, Refrigeration, and AirConditioning Engineers, Incorporated, and the National Conference of States on Building Codes and Standards, Incorporated. . . ." (Emphasis added.)
The only other guidance to the board for its standards is contained in section 2 of the act which states the purpose as follows in pertinent part:
 "The purpose of this act is to provide for the creation, application, and enforcement of uniform minimum standards for lighting and thermal design for certain buildings, consistent with national and statewide energy conservation goals, . . ."
Nowhere are the energy conservation goals more specifically identified or defined. Nowhere are the `recognized and accepted standards' more specifically identified or defined. Nowhere is there any guidance or limitation for determining what may be a `reasonable and cost effective requirement.' Although the board may consider seven different standards identified in the act, it may or may not include all or any part of them in its standards.